UNITED STATES of America, Appellee,

v.

Ralph M. CHAVEZ, Appellant.

No. 80–1153.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1980.

Decided Sept. 11, 1980.

David M. Ochoa, Phoenix, Ariz., for appellant.

Kenneth Fields, Asst. U. S. Atty., Phoenix, Ariz., on brief; Elizabeth Grace Jucius, Asst. U. S. Atty., Phoenix, Ariz., argued, for appellee.

Before KILKENNY and SNEED, Circuit Judges, and CALLISTER, District Judge.*

KILKENNY, Circuit Judge:

Appellant was charged in a one count information with the willful failure to file income tax returns in violation of 26 U.S.C. § 7203, a misdemeanor. Subsequently, after a determination that appellant did not have sufficient funds to employ counsel, an attorney was appointed. Appellant, after a court trial on stipulated facts, was convicted and sentenced to one year imprisonment and fined $3,000.00. He is prosecuting this appeal *in forma pauperis.* We affirm.

---

* The Honorable Marion J. Callister, United States District Judge for the District of Idaho, sitting by designation.

## PROCEDURAL BACKGROUND

On January 9, 1980, appellant was arraigned and he entered a plea of not guilty. On January 23, 1980, appellant filed a motion to dismiss the information on the grounds that the statute was unconstitutional. Appellant complained that § 7203's costs of prosecution provision was mandatory and that it chilled the exercise of his constitutional rights. This motion was denied on February 4, 1980. The district court ruled that if a statute can be reasonably read in two ways it must construe the statute so as to avoid doubt as to its constitutionality and that the costs of prosecution provision was discretionary and constitutional.

On February 12, 1980, the appellant went to trial on stipulated facts. Appellant waived a jury trial without waiving the right to appeal on the issues raised in his motion to dismiss. The court found appellant guilty. Pursuant to customary practice it did not assess costs.

## ISSUES

The issues presented for review are:

I. Whether the imposition of costs provision of 26 U.S.C. § 7203 is mandatory or discretionary.

II. Whether the imposition of costs provision of 26 U.S.C. § 7203 unconstitutionally chills a defendant's exercise of his constitutional rights to a jury trial, to confront witnesses and of compulsory process.

## I.

■ The challenged statute, in pertinent part, provides:

"Any person . . . [who willfully fails to file a return, supply information, or pay tax required by law] shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, *together with the costs of prosecution.*"
[Emphasis supplied.]

It is appellant's contention that the costs of prosecution provision is mandatory and that a trial court has no discretion but to impose costs. With this contention we agree.

Appellee argues that: (1) there is no congressional history specifically indicating that the disputed provision is mandatory; (2) any ambiguity in the statute should be construed so as to eliminate any doubt as to its constitutionality; and (3) the practice of the United States District Court for the District of Arizona is to consider the provision discretionary. These factors, it is argued, require this court to hold that the costs of prosecution provision may be applied in the discretion of the district court. We disagree.

The earliest version of § 7203 was enacted by Congress in 1913 and provided that any person refusing or neglecting to file a return by law should be liable to a "penalty of not less than $20 nor more than $1,000." The 1913 Act also provided that any person filing a false or fraudulent return with the intent to defraud or evade taxes "shall be guilty of a misdemeanor, and shall be fined not exceeding $2,000 or be imprisoned not exceeding one year, or both, at the discretion of the court, with the costs of prosecution." Act of Oct. 3, 1913, ch. 16, § f, 38 Stat. 171 (1913). Under this Act the costs of prosecution could not be imposed for mere failure or refusal to file a return. And when costs could be imposed, it was not altogether clear whether it was mandatory or discretionary. It was clear, however, that the imprisonment and fine provisions were left to the discretion of the court.

It was not until 1924 that Congress added the additional penalty of costs of prosecution for the failure to file tax returns. Revenue Act of 1924, ch. 324, § 1017(a), 43 Stat. 343–44 (1924). The penalty provision of the 1924 Act reads substantially the same as the current law. We have located no legislative history indicating why the costs provision was added at that time.

The plain meaning of the statute is clear. The grammatical structure of the statute and the use of the word "shall" compel the

conclusion that the provision is mandatory. "The use of the word 'shall' in the statute, although not entirely controlling, is of significant importance, and, indicates an intention that the statute should be construed as mandatory." *United States v. Rands*, 224 F.Supp. 305, 306–7 (D.Or.1963), *reversed on other grounds*, 367 F.2d 186 (CA9 1966), *reversed*, 389 U.S. 121, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967). *See also* 2A Sutherland, Statutory Construction § 57.03 at 415 (1973).

Also, Congress has demonstrated that it knows how to write a discretionary costs of prosecution provision. 28 U.S.C. § 1918(b) provides: "Whenever any conviction for any offense not capital is obtained in a district court, the court *may* order that the defendant pay the costs of prosecution." [Emphasis supplied.] The contrast in the language in § 1918(b) and § 7203 indicated that Congress knew what it was doing in 1924 when it drafted a mandatory provision.

■ We have a duty to interpret a statute, *susceptible of two readings*, in such a way as to avoid any doubt as to its constitutionality. However, § 7203 is not susceptible of two interpretations.

Appellee argues that since the Arizona district court has always considered the costs provision discretionary this court should construe the statute so as to be consistent with that practice. The practice of the district court cannot, however, amend the statute in the face of a specific congressional requirement. We are compelled to follow the congressional command and we hold that the challenged provision is mandatory.

## II.

Appellant urges that the costs of prosecution provision of the statute is unconstitutional. He claims that the threat of the mandatory imposition of the costs of prosecution upon conviction chills his exercise of constitutionally protected rights—the right to trial by jury, the right to confront witnesses, and the right to compulsory process for obtaining witnesses. Because the costs of prosecution are a function of the length and complexity of a trial, the number of witnesses, the length of transcripts, the distances traveled and other similar factors the extent to which a defendant exercises the above-mentioned rights will have an affect on the penalty he risks suffering. The threat of possibly increased penalties, the appellant argues, chills the exercise of his constitutional rights.

Appellant relies principally upon *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). *Jackson* involved a provision of the Federal Kidnapping Act that authorized the death penalty "if the verdict of the jury shall so recommend." The statute set forth no procedure for imposing the death penalty upon a defendant who waived the right to a jury trial or upon one who plead guilty. The Supreme Court rejected the government's argument that the statute gave the trial judge discretion to set aside a recommendation of death and held the death penalty provision unconstitutional because it imposed an impermissible burden upon the exercise of a constitutional right.

The Supreme Court stated that "[t]he inevitable effect of [the provision was] . . . to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." 390 U.S. at 581, 88 S.Ct. at 1216. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, the Court said, it would be patently unconstitutional. The death penalty provisions, however, had a concededly proper purpose. But whatever the government objectives, they could not be pursued by means that needlessly chilled the exercise of constitutional rights. The Court said that "[t]he question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive." *Id.* at 582, 88 S.Ct. at 1216. "[T]he evil in the federal statute is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it need-

lessly *encourages* them." *Id.* at 583, 88 S.Ct. at 1217.

We reject any suggestion that the costs of prosecution provision is patently unconstitutional because it has no other purpose or effect than to chill the assertion of constitutional rights. The Congress may have had any number of constitutionally permissible purposes in requiring that a defendant convicted of a willful failure to file a return pay the costs of prosecution. The legitimate governmental ends would include the recovery of expenditures to compensate the government and the imposition of additional punishment. The question remains, however, whether the provision is constitutionally infirm because it needlessly encourages the waiver of constitutional rights.

It must be emphasized that not every assertion that a statutory scheme has chilled the exercise of a constitutional right results in a finding of unconstitutionality. The Supreme Court, in post-*Jackson* decisions, has not enthusiastically embraced the "chill" rationale articulated in *Jackson.* In *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), the Court upheld an Oregon recoupment scheme which required convicted defendants who were indigent at the time of the criminal proceeding against them, but who subsequently acquired the financial means to do so, to repay the costs of their legal defense. The Court rejected a contention, based on a *Jackson* rationale, that a defendant's knowledge that he may be under an obligation to repay the expenses incurred in providing him legal representation might impel him to decline the services of an appointed attorney and thus "chill" his constitutional right to counsel. *Fuller,* the Court said, was fundamentally different from those decisions which invalidated laws that placed a penalty on the exercise of a constitutional right. "Oregon's system for providing counsel quite clearly does not deprive any defendant of the legal assistance necessary to meet [their] needs." 417 U.S. at 52, 94 S.Ct. at 2124. An indigent's knowledge that he might some day be required to repay the costs of his legal services in no way affected his eligibility to obtain counsel. Mr. Justice

Douglas, in a concurring opinion, noted that because the Oregon recoupment scheme had been narrowly construed "the 'chill' on the exercise of the right to counsel is no greater than that imposed on a nonindigent defendant without great sums of money." *Id.* at 56, 94 S.Ct. at 2126 (Douglas, J., concurring).

More recently, in *Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978), the Supreme Court declined to adopt a broad reading of *Jackson* in another case in which it arguably could have applied. In *Corbitt,* under the New Jersey homicide statutes, life imprisonment was the mandatory punishment for defendants convicted by a jury of first degree murder, while a term of not more than thirty years was the punishment for second degree murder. If a plea of *non vult* was accepted, however, the judge need not decide whether the murder was first or second degree, but the punishment could be either life imprisonment or the same punishment imposed for second degree murder. The defendant argued "that the possibility of a sentence of less than life upon the plea of *non vult,* combined with the absence of a similar possibility when found guilty by a jury, [was] an unconstitutional burden on his federal rights under the Fifth, Sixth, and Fourteenth Amendments." *Id.* at 218, 99 S.Ct. at 497. The Court stated that "the cases in this Court since *Jackson* have clearly established that not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." *Id.* The Court upheld the New Jersey statute and stated that *Jackson* did not require otherwise. "The principal difference is that the pressures to forgo trial and to plead guilty to the charge in this case are not what they were in *Jackson.*" *Id.* at 217, 99 S.Ct. at 496.

In the instant case we find that any pressures upon the defendant to waive his constitutional rights that may exist on account of the costs of prosecution provision are not such as to compel this court to find the Congressional scheme unconstitutional.

A defendant, prosecuted for willful failure to file a tax return, is not subject to a substantial risk of greater punishment because of the existence of the costs of prosecution provision. The provision does serve legitimate governmental purposes. We cannot say with any confidence that the costs of prosecution provision of § 7203 does in fact penalize a defendant's exercise of his constitutional rights. Section 7203 provides for a punishment of not more than $10,-000.00, or more than one year imprisonment, or both. Any sentence that would be imposed upon conviction, within those bounds, would be within the ordinary discretion of the trial judge. The presence of the mandatory costs of prosecution provision does not, with any degree of certainty, substantially increase the threatened punishment. Any encouragement of the waiver of constitutional rights that this provision may induce is substantially different from the pressures that undeniably existed in *Jackson*, and cannot be said to be an impermissible burden upon the exercise of constitutional rights. In light of the fact that the provision does serve legitimate government purposes, we cannot say that it needlessly encourages the waiver of constitutional rights.

In holding that § 7203's costs of prosecution provision does not create an impermissible burden on the exercise of constitutional rights, we recognize that the Second Circuit has suggested that a mandatory costs of prosecution provision might be constitutionally suspect. In *United States v. Glover*, 588 F.2d 876 (CA2 1978), the Second Circuit considered the operation of 28 U.S.C. § 1918(b), which authorizes a district court to impose costs in a noncapital case. Since § 1918(b) is discretionary the Second Circuit found no constitutional problems. The court mentioned in dictum that a statute which directed that the costs of prosecution be assessed against all convicted de-

fendants might be unconstitutional. In the instant case we are dealing with a mandatory provision. We decline, however, to follow the Second Circuit's suggestion that such a provision would be unconstitutional. We refuse to extend the rationale of *Jackson*, particularly in light of subsequent Supreme Court decisions, to the instant case.

Appellant's second major argument against the constitutionality of the statute is that his indigency precludes the mandatory assessment of costs. In *United States v. American Theater Corp.*, 526 F.2d 48 (CA8 1975), the Eighth Circuit, although it upheld the constitutionality of § 1918(b) as applied, noted that there would be constitutional problems with the taxing of costs to an indigent criminal defendant. Appellant here contends that he was denied a full opportunity to exercise his constitutional rights because of his impecunity.

The Supreme Court has shown special concern for protecting the constitutional rights of indigent criminal defendants. In *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court found that petitioners' constitutional rights had been violated because they were too poor to obtain a transcript of the trial proceedings necessary to afford them adequate and effective appellate review. Once Illinois decided to grant appellate review it had to do so in a way that did not discriminate against some convicted defendants on account of their poverty. Justice Black asserted "[t]here [could] be no equal justice when the kind of trial a man get depends on the amount of money he has." *Id.* at 19, 76 S.Ct. at 591. In many other cases, the Supreme Court has protected the rights of indigent criminal defendants. *E.g. Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).[1]

1. We note first that the Supreme Court's recent equal protection decisions dealing with indigents have departed somewhat from the sweeping pronouncements of earlier decisions. For example, in *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), the Court

stated that "This case involves no discrimination against a suspect class. An indigent woman desiring an abortion does not come within the limited category of disadvantaged classes so recognized by our cases. Nor does the fact that the impact of the regulation falls upon

Although the Supreme Court has been vigilant in protecting the constitutional rights of indigent criminal defendants the Court has recognized that "we live in a society where the distribution of legal assistance, like the distribution of all goods and services, is generally regulated by the dynamics of private enterprise." *Fuller v. Oregon,* 417 U.S. at 53, 94 S.Ct. at 2124. This recognition of harsh economic realities surely does not mean that a criminal defendant can be deprived of a minimum degree of fairness in the criminal justice system. "The Court has not guaranteed that all defendants will be able to present their defense or prosecute their appeals with equal resources, for it is incapable of leveling the economic ability of some defendants to pay for superior legal or investigative services that may be of some assistance to them. However the Court has sought to guarantee a basic level of fair treatment as a fundamental constitutional right." Nowak, Rotunda & Young, Handbook on Constitutional Law 678 (1978).

■ The instant case poses an issue that is different from the issues in *Griffin* or *Gideon.* Those cases involved a denial of adequate access to the criminal justice system or deprivations of fundamental constitutional rights necessary to insure fairness. There was no suggestion that the lack of funds affected appellant's eligibility to have a jury trial or compulsory process. There was here only the possibility that appellant might later be assessed the costs of prosecution. This is not enough to require a holding that appellant has thereby been denied a full and fair opportunity to exercise his constitutional rights.

those who cannot pay lead to a different conclusion. In a sense, every denial of welfare to an indigent creates a wealth classification as compared to nonindigents who are able to pay for the desired goods or services. But this Court has never held that financial need alone identifies a suspect class for purposes of equal protection analysis." *Id.* at 470–71, 97 S.Ct. at 2381. *See also Harris v. McRae,* —— U.S. ——, —————, 100 S.Ct. 2671, 2690–92, 65 L.Ed.2d 784 (1980). The Court, in *Maher,* noted that its decision did not represent a re-

## CONCLUSION

Finding no error, we affirm the judgment of the district court.

**AFFIRMED.**

treat from cases like *Griffin* and *Douglas* which had been based on an equal protection rationale. 432 U.S. at 471 n.6. To reach our result, we do not need to rely on the position stated in *Maher* or *Harris,* but express the view that we have difficulty in finding a logical explanation for distinguishing between "suspect classes" for equal protection analysis, whether in the criminal or civil fields of law. We believe, however, that these cases caution against an overbroad reading of *Griffin* and *Douglas.*