UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Howard JUNGELS,
Defendant–Appellant.

No. 89–3403.

United States Court of Appeals,
Seventh Circuit.

Argued June 20, 1990.

Decided Aug. 23, 1990.

As Amended Aug. 27, 1990.

**1502**

Ralph M. Friederich, Asst. U.S. Atty., Office of the U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Michael Dwyer, Office of the Federal Public Defender, St. Louis, Mo., for defendant-appellant.

Before FLAUM and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

PER CURIAM.

A jury convicted Charles Jungels of income tax evasion, filing false income tax returns, and obstruction of justice. Jungels challenges the district court's denial of his motion to suppress and the imposition of the costs of prosecution. We affirm.

## I. Background

Jungels was an attorney specializing in personal injury, medical malpractice and workers' compensation cases who practiced in Granite City, Illinois. He accepted cases on a contingency basis which entitled him to one third of any personal injury award, forty percent of medical malpractice awards, and twenty percent of workers' compensation awards. Jungels' deceptive practice was to declare to the Internal Revenue Service (IRS) only a small portion of the fees he actually received. For instance in 1981, Jungels' income tax return showed that his taxable income was $27,000, when in fact his taxable income was $77,000. To avoid detection, he had his legal clients sign statements attesting to lower fee amounts. Also Jungels failed to declare as income his receipts from a lucrative marijuana and cocaine trafficking business. These practices continued through 1983.

Jungels hid his unreported income by purchasing bonds and opening up bank accounts in the names of other people. For instance he purchased a bond in the amount of $21,000 in the name of a three year old boy named Charles Pitman. Pitman was the son of Elizabeth Marzluff, Jungels' former employee and sometime girlfriend. Marzluff discovered the bond scheme when she mistakenly received by mail a check for the full amount of the bond in her son's name. She cashed the check and split the money with another of Jungels' employees. In order to find out what else Jungels might have bought in her or her son's name, she broke into his house and stole some financial records, including an assortment of bills and deposit slips.

Whether feeling the pangs of conscience or fearing prosecution, Marzluff reported her findings to the IRS, which opened an investigation into Jungels' taxes. She also turned over the various bills and financial documents which she had stolen. Some of the documents were in Marzluff's name and some were in her son's name. As part of its investigation, which at this time was both civil and criminal in nature, the IRS issued summonses for records in both names to various banks, savings and loans, and brokerage firms.

Jungels, who did not yet know that Marzluff was cooperating with the IRS, tried to persuade her to file a motion to quash the summonses the IRS had issued in her name. To this end he suggested that she meet with his attorneys. Marzluff advised

the IRS about Jungels' suggestion, decided to attend the meeting and agreed to be wired with a tape recorder. On October 31, 1983, Marzluff and Jungels drove to Bellville, Illinois for the meeting. After the meeting, on the ride back to and when they arrived at Granite City, Jungels made incriminating statements to Marzluff concerning his scheme to skim money from his law practice. Those statements were preserved on Marzluff's hidden recorder.

Four years later, the government indicted Jungels on two counts of income tax evasion pursuant to 26 U.S.C. § 7201, three counts of filing false income tax returns pursuant to 26 U.S.C. § 7206 and two counts of obstruction of justice pursuant to 18 U.S.C. § 1503. Prior to trial in August 1989, Jungels filed a motion to suppress the documents obtained through the IRS summonses and the statements recorded by Marzluff. At a hearing on the motion, Special Agent James Wehrheim testified on behalf of the IRS that the summonses were issued because the records received from Marzluff were incomplete and she did not know if Jungels had opened additional accounts in her name or her son's name. He stated that the issuance of these summonses was part of standard investigation procedures to obtain complete records.

Relying on *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), and *United States v. Gimbel*, 782 F.2d 89 (7th Cir.1986), the district court denied the motion to suppress, stating that the summonses were issued for a proper purpose because the IRS sought clearly relevant information that was not in its possession. Regarding the tape recorded conversations, the court held that the Sixth Amendment right to counsel had not attached when the recordings were made because adversary judicial proceedings had not yet been initiated. The court found that the attorney-client privilege did not extend to conversations made en route to and returning from the attorney conference. (The tape of the conversation at the attorney's office was not submitted into evidence.) Finally, the court found that there was no Fourth Amendment violation resulting from Marzluff's consensual monitoring.

After a jury convicted Jungels on all seven counts on August 28, 1989, the district court sentenced him to a three year term of imprisonment on the tax evasion count and a concurrent three year term on the other six counts. The court also taxed Jungels with costs of prosecution totalling $937 pursuant to 26 U.S.C. §§ 7201 and 7206.

On appeal Jungels argues that the district court erred in imposing costs on him because he was found to be indigent for purposes of appointment of counsel. Next he argues that the IRS improperly issued summonses for information to which it allegedly had access. Finally he contends that the IRS violated his Sixth Amendment right to counsel when it elicited incriminating information from him through a cooperating witness.

## II. Analysis

A. *Taxation Of Costs Under 26 U.S.C. §§ 7201 and 7206 Against An Indigent Defendant*

This circuit recently held that costs are reimbursable under §§ 7201 and 7203 for expenses of transportation and subsistence for witnesses employed by the United States. *United States v. Dunkel*, 900 F.2d 105, 108 (7th Cir.1990). The court is now asked to decide for the first time whether the costs of prosecution can be taxed pursuant to § 7201 and a similar provision in § 7206 to a defendant who has been declared indigent for purposes of appointment of counsel. Jungels argues that the district court abused its discretion by imposing costs on such a defendant.

The court's interpretation of this issue must begin with the plain language of the statutes. *In re Sanderfoot*, 899 F.2d 598, 600 (7th Cir.1990). § 7201 provides:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, *shall* be fined

not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than five years, or both, *together with the costs of prosecution.*

(Emphasis added). Similarly, § 7206(1) provides:

Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ... shall be guilty of a felony and, upon conviction thereof, *shall* be fined not more than $100,000 ($500,000 in the case of a corporation), imprisoned not more than 3 years, or both, *together with the costs of prosecution.*

(Emphasis added). Pursuant to these statutes, the district court has discretion to impose either a fine or imprisonment or both on a defendant. The court must however ever award costs. The grammatical structure of the statute and the use of the word "shall" can only mean that the provision regarding costs is mandatory. Three other circuits have given the same construction to similar language in § 7203. *United States v. Palmer,* 809 F.2d 1504, 1506 (11th Cir.1987); *United States v. Wyman,* 724 F.2d 684, 688 (8th Cir.1984); *United States v. Chavez,* 627 F.2d 953, 955 (9th Cir.1980) ("The use of the word 'shall' in the statute, although not entirely controlling, is of significant importance, and, indicates an intention that the statute should be construed as mandatory."), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1376, 67 L.Ed.2d 353 (1981).

Congress has enacted other statutes which provide for the imposition of costs at the discretion of the district court. 28 U.S.C. § 1918(b) provides: "[w]henever any conviction for any offense not capital is obtained in a district court, the court *may* order that the defendant pay the costs of prosecution." (Emphasis added). The contrast in the language in § 1918, and §§ 7201 and 7206 indicates that Congress

knew how to draft both mandatory and discretionary provisions without confusing the two. *Chavez,* 627 F.2d at 955. Because the plain language of the statute is clear, the court need not engage in a lengthy examination of legislative history. *Schalk v. Reilly,* 900 F.2d 1091, 1095–96 (7th Cir.1990). Also Jungels' argument regarding potential constitutional problems in taxing costs to indigent defendants is meritless. *Palmer,* 809 F.2d at 1508 (the mere possibility of a substantial increase in penalty does not have an impermissibly chilling effect on the exercise of a defendant's constitutional rights); *Wyman,* 724 F.2d at 688; *Chavez,* 627 F.2d at 957.

We hold that the imposition of costs under §§ 7201 and 7206 is mandatory. We express no opinion on the propriety of taxing costs on an indigent defendant under a discretionary statute such as § 1918(b).

### B. *Good Faith Issuance Of Summonses*

■ Next Jungels argues that the IRS did not issue the summonses in Marzluff's name and her son's name in good faith because the information sought in the summonses was already in the possession of the IRS. In *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court established two requirements for the enforcement of an IRS summons. First, the summons must be issued before the IRS recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken. *Id.* at 313, 98 S.Ct. at 2366; *see* 26 U.S.C. § 7602(c)(1). Second, prior to a recommendation for prosecution to the Department of Justice, the IRS must use its summons authority in good faith pursuit of the congressionally authorized purposes of § 7602.[1] *LaSalle Nat'l Bank,* 437 U.S. at 314, 98 S.Ct. at 2366; *Donaldson v. United States,* 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971); *Powell,* 379 U.S. at 57–58, 85

---

1. The Tax Code at 26 U.S.C. § 7602 permits the use of a summons "[f]or the purpose of ascertaining the correctness of any return, ... determining the liability of any person for any inter-

nal revenue tax ..., or collecting any such liability, the Secretary is authorized to examine any books, papers, records, or other data which may be relevant or material to such inquiry."

S.Ct. at 255. In *Powell,* the Supreme Court announced several elements of a good faith exercise:

> [The IRS] must show [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed.

*Id.* at 57–58, 85 S.Ct. at 255. The mere fact that the Government might be able to obtain some or all of the documents through a different procedure does not by itself compel the conclusion that the Government's attempt to enforce the summons is being made in bad faith. *Gimbel,* 782 F.2d at 93 (IRS summons is not issued in bad faith where the government had access to the requested documents through a tax court case); *United States v. Arthur Andersen & Co.,* 623 F.2d 725, 728 & n. 5 (1st Cir.1980) (the IRS is not barred from invoking its summons authority under § 7602 merely because the Department of Justice has recourse to available bankruptcy discovery procedures).

■ Jungels has not demonstrated sufficient justification to preclude enforcement of the IRS summons. No recommendation to the Justice Department for criminal prosecution was made until four years after the IRS issued the summonses. Regarding the *Powell* criteria, although the record shows that the IRS had received from Marzluff some documents which she had obtained from Jungels' home, it does not show that she had documented all of the accounts that Jungels may have opened in her name or her son's name. In fact, the information and documents that she purloined may have only revealed the tip of the iceberg. Because production of the financial institutions' records could be expected to reveal part or all of this information, which would be material to the computation of Jungels' tax liability, the *Powell* criteria do not preclude enforcement. Therefore the IRS is not barred from invoking its summons authority under § 7602 merely because the IRS has access to some documents through a cooperating witness.

## C. Sixth Amendment Right To Counsel

Finally, Jungels argues that the IRS interfered with his Sixth Amendment right to counsel when it wired Marzluff during the conference with his attorneys. Jungels draws an analogy between Marzluff's actions and cases in which statements were surreptitiously elicited by undercover agents such as jail informants. This argument is meritless.

■ It is firmly established that the right to counsel attaches only at or after the "initiation of adversary judicial proceedings." *United States v. Gouveia,* 467 U.S. 180, 185–86, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984); *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). Thus the Sixth Amendment right to counsel provides every defendant with the right to have representation during a "critical stage" of the adversarial proceedings. *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978); *United States v. Wade,* 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967). Jungels does not argue that judicial proceedings had been initiated by way of formal charge, preliminary hearing, indictment, information, or arraignment. Because the matter had not yet proceeded from the investigative to the accusatorial stage, *Moran v. Burbine,* 475 U.S. 412, 432, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986); *United States v. White,* 879 F.2d 1509, 1513 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990), Jungels has made no showing whatsoever that the investigation had reached a "critical stage" requiring the right to counsel under the Sixth Amendment.

## III. Conclusion

For these reasons, both the conviction and the decision of the district court to impose costs are

AFFIRMED.