**UNITED STATES of America**

v.

**Dwight McKENNA.**

**Crim. A. No. 91–446.**

United States District Court,
E.D. Louisiana.

April 27, 1992.

---

**1102**

Jan Mann, Robert Boitmann, U.S. Attorney's Office, New Orleans, La., for plaintiff.

John Reed, Robert Glass, New Orleans, La., for defendant.

### ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

Before the Court are the following post-trial motions filed filed with the Court in the captioned proceedings:

1. The Government's Motion to Dismiss Defendant's Motion for New Trial.[1]
2. Defendant's Motion for New Trial.[2]
3. The Government's Motion to Impose Costs.[3]

In keeping with the policy of this section of court that oral argument on motions is restricted to the briefs, the Court previously determined that oral argument was unnecessary and is thus deciding the above enumerated matters on the briefs.

I. Motion to Dismiss Motion for New Trial.

The Government's Motion to Dismiss is premised on the failure of the defendant to file its Motion for New Trial within the time-period prescribed by Rule 33 of the Federal Rule of Criminal Procedure, which time-period is jurisdictional.[4]

The *entirety* of the body of defendant's pleading entitled "Motion for New Trial and Incorporated Memorandum" filed March 19th, 1992, reads as follows:

Defendant Dwight McKenna, by counsel, moves the court to grant him a new trial on the grounds that he was denied his right, guaranteed by the Sixth Amendment to the United States Constitution, of effective confrontation of the government witness Bruno by the court's refusal to permit leading questions of Mr. Bruno on cross-examination; and that he was denied the right to effective cross-examination; and under accepted rules of evidence and procedure as embodied in Rule 611(c) of the Federal Rules of Evidence.[5]

The Federal Rules of Criminal Procedure at Rule 33 provide in pertinent part:

A motion for new trial based on any other grounds [that is—grounds other

---

1. This matter was set for oral hearing on April 15, 1992, but was submitted on the briefs. See, Minute Entry Order, dated April 9th, 1992.

2. This matter was set for hearing on April 29th, 1992, but was submitted on the briefs. See, Minute Entry Order dated April 24th, 1992.

3. See, *supra* Note 1.

4. See, *United States v. Brown,* 587 F.2d 187, 189 (5th Cir.1979) [holding that "after the expiration of the 7–day period following the guilty verdict

in this case, the district court had no jurisdiction, under the plain meaning of Rule 33, to enter an order purporting to enlarge the time within which Brown could file a motion for new trial."].

5. See, Defendant's Motion for a New Trial and Incorporated Memorandum, filed March 19, 1992.

than newly discovered evidence] *shall be made within 7 days after verdict* or finding of guilty **or within such further time as the court may fix** *during the 7 day period.* *Id.* [emphasis supplied].

Rule 45 of the Federal Rules of Criminal Procedure regarding the enlargement of time for filing certain pleadings specifically states that *"the court may not extend the time* for taking any action under Rules 29, 33, 34 and 35, *except to the extent and under the conditions stated in them." Id.* [emphasis supplied].

The plain language of Rule 33 distinctly curtails a district court's authority with respect to enlarging the time for filing a motion for new trial once the 7-day period after the verdict has elapsed. Moreover, Rule 45 of the Fed.Rules of Crim.Proc. which makes provisions for the enlargement of time for filing certain pleadings, specifically excepts Rule 33 motions, thus cinching the strictures imposed by Rule 33.

A chronological listing of the relevant filings and procedural events in the instant case follows:

1. On Saturday, February 15th, 1992, the jury rendered a verdict of guilty as to Counts One and Two of the Indictment against the defendant for making false statements on certain income tax returns.

2. On Monday, February 24th, 1992, the defendant filed his first motion for extension of time requesting an additional days within which to file a motion for new trial.[6]

3. On February 24th, 1992, the Court granted defendant an additional 14 days within which to file a motion for new trial.

4. On March 9th, 1992, indisputably the last day of the first 14-day extended period, defendant filed an second motion to extend the time within which to file his motion for new trial requesting an additional 21 days, through March 30th, 1992, which motion was opposed by the Government.

5. On March 9th, 1992, relying on the defense counsels' representation that defense counsel's request was filed on "good" grounds,[7] the Court granted the defendant's second motion for extension of time to file its Rule 33 motion, albeit without authority to do so under the applicable rules, granting him an additional 10 days until March 19, 1992, within which to file his motion for new trial.

6. On March 19, 1992, the last day of the second extended period, the defendant filed a one-paragraph Motion for New Trial and Incorporated Memorandum.

At the outset and to clarify the record, in the Court's opinion the only "misplaced reliance" is the Court's own reliance upon defense counsel's pleading for a second extension of time. Implicit in any such pleading is that counsel has "good" grounds for filing an additional motion for extension of time and that under a "reasonable" interpretation or extension of the statutes and the law of the Fifth Circuit which the Court is bound to follow, that the granting such an extension is within the ambit of the Court's authority. Further implicit in defense counsel's Motion for Additional Extension of Time is that he intended to file Motion for New Trial and Memorandum in Support of such substance and tenor which would necessitate a review of the transcript of proceedings.[8]

---

**6.** This was a timely extension inasmuch as Rule 45(a) provides in computing time periods of less than 11 days, holidays and weekends are excluded.

**7.** Counsel for defendant represented that he needed additional time to obtain and review a transcript of the proceedings in order to evaluate the grounds for a motion for new trial. See, Defendant's Motion for Additional Extension of Time, filed and entered into the record on March 9, 1992.

**8.** The Court notes that the defendant's Motion for New Trial and Incorporated Memorandum is not of such substance and tenor as would have ever required the second motion for extension of time of an additional 21 days. See, Defendant's Motion and Incorporated Memorandum reiterated in its entirety on page 2 of this order.

Defendant's "Motion for New Trial and Incorporated Memorandum" reiterated *in extenso* on page 2 of this order and reasons, undoubtedly could have been dictated into the record within a period of 3 minutes after the jury rendered its verdict on February 15th, 1992, with little, if any, difficulty. There is no question that counsel for defendant was adequately prepared to file such a pleading well within the statutory timeframe, but perhaps overlooked or was not fully cognizant of the time-honored strictures of Rule 33 and now asks the Court to "redo" the Rule.

Misplaced reliance on the part of defense counsel is not an issue, when as in this case on the eve of expiration of the first extension, defense counsel files a second Motion for Extension of Time representing to the Court that said additional motion for extension of time was "pursuant to Rule 33, F.R.Cr.P." [i.e. was well-founded in law][9] and necessary in order adequately prepare and file the motion for new trial and any memorandum in support thereof.

The chronological listing above makes it clear that March 9th, 1992, the second occasion upon which the Court was requested to fix the time for filing defendant's Motion for New Trial, was not "within such further time as the court may fix *during* the 7–day period." F.R.Cr.P. Rule 33 [emphasis supplied].

The controlling law of the Fifth Circuit is as plain, clear and simple as F.R.Cr.P. Rule 33 which it explains, to wit:

We hold that the trial court had no power to order a conditional new trial after more than a month had passed without the filing of a motion for new trial by defendant Brown. A district court has no jurisdiction to consider a new trial motion filed beyond the seven-day time limit contained in Rule 33, and it is powerless to order a new trial except on motion of the defendant. **After expiration of the seven-day time period following the guilty verdict in this case,** *the district court had no jurisdiction, under the plain meaning of Rule 33, to enter an order purporting to enlarge the time within which Brown could file a motion for new trial.*

*United States v. Brown,* 587 F.2d 187, 189 (5th Cir.1979) [citations omitted and emphasis supplied].[10] According to the Fifth Circuit in *Brown,* the seven-day time period prescribed by Rule 33 is *jurisdictional.* Thus, reliance, more particularly the *unreasonable* reliance argued by defense counsel, is a non-issue.

*United States v. Hocking,* 841 F.2d 735, 737 (7th Cir.1988) is identical to the instant case both *sub judice* and on its facts. In *Hocking,* the jury returned its verdict on November 4th, 1987. On November 9th, 1987, Hocking's counsel requested a 30–day extension of time to file motions. On November 16th, 1987, the court granted the request.[11] But Hocking did not file his

**9.** See, Defendant's Motion for Additional Extension of Time. The Court merely granted the defendant's "eleventh hour" request for extension, relying on defense counsel that the Rule 33 cited by defense counsel authorized such requested extension of time. Thus, assuming that such motion was well-founded in law, the only inquiry made by the Court was as to whether there was any objection by the Government and the Government in fact notified the Court that it was opposed to any extension of time. In view of the Government's objection the Court only granted an additional ten days instead of the requested 21 days additional time. Apparently, counsel for defendant does not contend that he relied on opposing counsel [i.e., counsel for the Government] to outline at a moment's notice any procedural dilemma defense counsel may encounter in filing an *ex parte* motion for extension of time. In any case, the Court discerns no such duty on the part of the Government to

counsel defendant's counsel and any reliance in this respect would have been not only misplaced but unreasonable.

**10.** Accord, *United States v. DiBernardo,* 880 F.2d 1216, 1223 (11th Cir.1989) [citing *United States v. Brown,* 587 F.2d 187, 189 (5th Cir.1979) for the proposition that "the time limits of Rule 33 are jurisdictional" and holding that "a district court is without jurisdiction to grant a new trial using the 'in the interest of justice' standard unless the motion is filed within seven days after the return of the guilty verdict or within any extension of time period granted by the trial judge *within the seven day period.*"].

**11.** This was a timely extension inasmuch as Rule 45(a) provides that in computing time periods of less than 11 days, holidays and weekends are excluded.

motions by December 16th, 1987, which was the outerlimit of time as extended by the district court during the statutory period prescribed by Rule 33. Instead, defense counsel requested and received a second extension of time, to December 29th, and filed the motions on December 28th, 1987. *Id.* at 736–37.

The *Hocking* court held that Hocking's Rule 33 motion was "not timely filed, and therefore the district court was without authority to entertain [it]." *Id.* at 736.

As to any detrimental reliance, the *Hocking* Court explained:

> Occasionally courts hold that despite Rule 45(b) and similar provisions in other rules, courts may act on untimely motions **when district judges induce parties to rely to their detriment on erroneous extensions of time.** See *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964); cf. *Fallen v. United States*, 378 U.S. 139, 143, 84 S.Ct. 1689, 1692, 12 L.Ed.2d 760 (1964). **These cases are of uncertain continuing authority,** for the reasons discussed in *Sonicraft, Inc. v. NLRB*, 814 F.2d 385, 387 (7th Cir.1987), and *Bailey v. Sharp*, 782 F.2d 1366, 1369–74 (7th Cir.1986) (concurring opinion). **Even if hearty, however, these cases offer no aid.** *Nothing in the record suggests that the district judge misled Hocking's lawyer.* **Any error was generated by the lawyer himself; the district court simply granted a motion.** As it turns out, the judge had no power to grant the motion—and for all we can tell, if he had denied it (as he was required to), Hocking had no way to file a timely motion, for he sought the second extension on the last day allowed by the first extension. The district court's denial of the motion would not have avoided the predicament in which Hocking finds himself. *Id.* at 737.

The *Hocking* court concluded, citing the Supreme Court's decision in *Browder v. Director, Department of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560–61, 54 L.Ed.2d 521 (1978),

> Courts cannot enlarge their own powers in the name of equity, and *parties who seek aid from the judicial branch must comply strictly with the jurisdictional time limits.*

*Hocking*, 841 F.2d at 737 [emphasis supplied].

■ Thus, considering the submissions of the parties, the facts and circumstances of this particular case and the controlling jurisprudence, the Court is of the opinion that it was without jurisdiction and had no authority to grant defendant's second motion for additional time to file a motion for new trial, which second motion for additional time was filed on the last day allowed by the first extension—that is, well beyond the statutory 7–day period prescribed by F.R.C.P. Rule 33 for enlarging the time for filing a motion for new trial. Here, as in *Hocking*, supra, nothing in the record, or otherwise, suggests the Court misled counsel for the defendant.

## II. Motion for New Trial.

Notwithstanding the Court's prior ruling that it was without authority to grant the defendant's second extension of time to file a motion for new trial, the Court here addresses the merits of same. By sealed Minute Entry Order dated February 14, 1992, with attachments of the transcript of proceedings applicable to defendant's motion for new trial which are also sealed, and of which only the defendant and his counsel were privy, the Court set forth its rendition of both the events at trial and *in camera* hearing relevant to defendant's Motion for New Trial. For obvious reasons, the Court will not reiterate herein the contents of either the sealed transcript of the *in camera* proceedings or its sealed Minute Entry Order of February 14, 1992. It only makes reference thereto for purposes of directing the reviewing court to this Court's opinion regarding the facts and circumstances with which it was presented regarding defendant's claim that he was effectively denied his right to confrontation under the Sixth Amendment by this Court's ruling with respect defense counsel's interrogation of defendant's accountant Mr. Bruno [i.e., a witness called by the Government in this case].

As to the law applicable to defendant's alleged denial of his right to confrontation, the Court has yet to discern any authority for the proposition that absent *absolute* latitude to employ leading questions [i.e., which goes to the *mode* not the *scope* of interrogation], a defendant is denied his right to effective confrontation pursuant to the sixth amendment. Lest there be any mistake, the Court at no juncture of the proceedings in the captioned matter ever restricted or limited in any fashion the *scope* of cross-examination with respect to defendant's accountant Bruno—all avenues of inquiry were considered fair grist for interrogation by defense counsel.

 The Court's ruling in open court was to the effect that defense counsel could not employ leading questions but that he would be given latitude, until it was established that Bruno was in fact an adverse and/or difficult witness [12], at which point defense counsel would then be permitted to lead him all the way through the remainder of his testimony. Defense counsel opted to rest the defendant's case at that point—that is, despite the latitude which the Court would accord and despite the fact that in the event the defense established that Mr. Bruno was in fact an "adverse" or "unfriendly" witness, the Court expressed its intention to allow defense counsel to employ leading questions from that point forward.

In *United States v. Bourgeois*, 950 F.2d 980, 986 (5th Cir.), *reh'g denied*, 1992 WL 293, 1992 U.S.App. LEXIS 2720 (5th Cir. 1992), the Fifth Circuit stated: "We note at the outset that the trial court has broad discretion in limiting [even] the scope of cross-examination." In *Bourgeois*, the defendants argued that the trial court erred by restricting cross-examination of the Government's witness regarding his immunity agreement. The *Bourgeois* court held that defendant's Sixth Amendment rights were not violated and neither the comments not the rulings cited by the defendants amounted to an abuse of the district court's discretion in limiting cross-examination. *Id.*

In the case at bar, as in *Bourgeois*, supra, the Court allowed the defense counsel the opportunity and latitude to develop any point they desired to make on cross-examination of Bruno. The Court further indicated that upon establishing or in the event that Bruno proved to be a difficult witness, the Court would permit defense counsel to use leading questions to establish whatever they had in mind. The restrictions about which defense counsel complains are "mythical hype." The Court merely sought to control the proceedings to ensure that the testimonial evidence heard by the jury was elicited from the witness stand and was not provided by defense counsel, a duty the Court takes seriously whether the matter is of civil or criminal gender.

As was stated in *United States v. Smith*, 930 F.2d 1081, 1087 (5th Cir.1991): "The essential purpose of the confrontation clause is secure for the opponent the *opportunity* of cross-examination." [emphasis in original]. Defense counsel in the instant case apparently harbors the misconception that the sixth amendment affords him an absolute and unqualified right to employ leading questions on cross-examination of a witness called to testify by an opponent (even though the witness is still performing work for the defendant and without first having demonstrated any adverse tendencies). The Court does not har-

---

**12.** The testimony of Michael Bruno upon interrogation by the Government in its case was to the effect that: (1) defendant's counsel, Mr. Reed, acting as the attorney for Dwight McKenna, and upon Bruno being called to testify before the grand jury, instructed him (Bruno) to assert the "client/accountant" privilege and not answer certain questions, which instruction by Mr. Reed, the witness Bruno in fact followed; (2) at that time Bruno was still employed by the defendant and up until and including the time of defendant's trial the defendant is an account-ant/client of Bruno; (3) Bruno's firm prepared the defendant's 1989 and 1990 tax returns; (4) Bruno's firm currently performs accounting work for the defendant's newspaper; (5) though Bruno received a letter from Mr. Reed stating his services on behalf the defendant would be terminated, he (Bruno) continued to do accounting work for the defendant and the defendant's newspaper up until and including the time of trial. See, Transcript of the Testimony of Michael Bruno, taken in the afternoon session of February 13, 1992.

bor the same misconception but has followed the rule of the *Smith* court that "it [i.e. the Confrontation Clause] does not guarantee 'cross-examination that is effective in whatever way, and to whatever extent the defense might wish.'" *Id.* at 1087–88 [citing, *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, ?95, 88 L.Ed.2d 15 (1985) (per curiam) ].[13]

In the case at bar, defense counsel had ample opportunity to elicit whatever information they desired from Bruno utilizing non-leading questions. That defense counsel *refused the opportunity* to cross-examine because the Court in its discretion deemed it appropriate to impose some control on the *mode* of questioning does not in the Court's opinion constitute error on its part, nor does it convert this matter involving the imposition of reasonable limits on the mode of cross-examination into a constitutional case. "Not every limitation on cross-examination can be easily converted into a constitutional case."[14] The "limitation" complained of in the instant case certainly requires a conversion factor of more than a one-paragraph motion and incorporated memorandum *sans* citation of authorities.[15]

Control of the proceedings which the Court invoked in this case was neither calculated to nor could it reasonably be expected to have a substantial effect on the jury's decision. No doubt, defense counsel's "throwing in the towel" did have some effect, albeit not the effect desired by defense counsel. Defense counsel's tactical

decision to refrain from interrogating Bruno on the witness stand altogether, was not a prohibition handed down by the Court. There was no such prohibition imposed on the defendant in this case. As such, McKenna does not state a sixth amendment violation.[16]

Federal Rule of Evidence 611 sets forth the general rule that *"ordinarily* leading questions should be permitted on cross-examination." The Fifth Circuit in *Ardoin v. J. Ray McDermott & Co.,* 684 F.2d 335, 336 (5th Cir.1982) explained:

> The rule [i.e., F.R.E. Rule 611] is not intended to be an endorsement of leading questions on cross-examination, however. The advisory committee notes make it clear that "[t]he qualification 'ordinarily' is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the 'cross-examination' of a party by his own counsel after being called by the opponent (savoring more of re-direct).... " *A trial court therefore has power to require a party cross-examining a friendly witness to employ non-leading questions. The decision whether to do so, however, lies within the district court's discretion. Id.* [emphasis supplied].

■ The rule that the extent of cross-examination and the restriction of the use of leading questions rest in the sound discretion of the trial court prevails in *criminal* as well as civil proceedings.[17]

---

**13.** See also, *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) [agreeing with Justice Harlan that "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, and not cross-examination in whatever way, and to whatever extent, the defense might wish.' "].

**14.** *United States v. Pitocchelli,* 830 F.2d 401, 404 (1st Cir.1987).

**15.** See, *supra* note 8 on page 5 of this order and reasons.

**16.** See, *United States v. Wright,* 904 F.2d 403, 406 (8th Cir.1990) [holding that a tactical decision not to cross-examine one or more witnesses is not a prohibition handed down by the court and thus, not a sixth amendment violation]; *United States v. Hines,* 696 F.2d 722, 731 (10th

Cir.1982) ["The Sixth Amendment right of confrontation does indeed include the right of the accused to cross-examine a witness against him. However, this right is not denied simply because the prosecution is permitted to examine a witness which the defense declines for tactical reasons to cross-examine."].

**17.** See, *United States v. Gravely,* 840 F.2d 1156, 1163 (4th Cir.1988) [citing F.R.E. 611 and stating, "the trial court is vested with broad discretion to control the mode of interrogation and presentation of evidence to ensure that witnesses are treated fairly and the search for the truth is not impaired by extraneous, prejudicial or confusing material]; *United States v. Bensinger,* 430 F.2d 584, 591 (8th Cir.1970) [holding the extent of cross-examination and the restriction on the use of leading questions rest in the sound

The defendant in this case bears the burden of demonstrating that any "restriction" imposed by the Court was clearly prejudicial.[18] Defense counsel's decision to rest effectively pretermits the Court's inquiry into the effectiveness of cross-examination in light of the Court's ruling. The utter absence of any record as to prejudice can only be deemed attributable to the defense counsel's self-imposed stricture—that is, no cross-examination of Bruno at all [i.e., my way or no way]. As to defense counsel's questionable tactics, the Government has argued in opposition to motion for new trial, as follows:

> The record will reflect that early into the case defense counsel began to engage in the sport of "judge-baiting" in an attempt to inject error into the proceedings. Defense counsel are too experienced to make faces at the court or to interject snide comments if they are involved in a case wherein they believe there is a chance of winning. *See,* Government's Memorandum in Opposition to Defendant's Motion for New Trial, at p. 9.

While the Court would not have, on its own, referred to the conduct of counsel during proceedings at trial in an opinion such as this, there is not a word in the foregoing passage quoted from the Government's memorandum in opposition with which the Court would not agree. Moreover, in making the evidentiary ruling at issue, touted as erroneous by the defense, the Court was by no means acting on a whim, but rather the very real need to impose some reasonable boundaries on the manner in which defense counsel sought to elicit evidence and thus, ensure the fairness of the proceedings.

Finally, the Court would be loathe to grant a new trial disturbing the guilty verdicts in this case, in light of the uncontroverted and overwhelming evidence against the defendant that he in fact intentionally committed the acts set forth in counts one and two of the indictment.

## III. Motion to Impose Costs.

The prosecution of this case occurred only at great expense to the Government, which the Court cannot overlook, but rather is required in a case such as this to impose such costs upon the defendant, which matter the Court addresses below.

■ The Government *via* Motion to Impose Costs has submitted its bill of costs incurred in the prosecution of the instant case in full sum of $5064.49. The defendant's response does not question the authority and/or discretion of the Court to impose the "costs of prosecution" but rather questions certain costs for which the Government seeks reimbursement.

Title 26, United States Code, § 7206(1) provides:

> Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ... shall be guilty of a felony and, upon conviction thereof, ***shall*** be fined not more than $100,000 ($500,000 in the case of a corporation), imprisoned not more than 3 years, or both, *together with* ***the costs of prosecution.*** [emphasis supplied].

One court has directly addressed the issue as to whether it is mandatory that the district court award the "costs of prosecution" pursuant to section 7206(1) and answered in the affirmative, to wit:

> Pursuant to these statutes [i.e. § 7206(1)], the district court has discretion to impose either a fine or imprisonment or both on a defendant. *The court* ***must*** *however award costs.* The gram-

---

discretion of the trial court]. See also, *United States v. Gordon,* 780 F.2d 1165, 1175 (5th Cir. 1986) [holding limitation of the scope and extent of cross-examination is a matter committed to the sound discretion of the trial judge reviewable only for clear abuse of discretion]; *United States v. Dickie,* 775 F.2d 607, 611 (5th Cir.1985).

**18.** *United States v. Alonso,* 740 F.2d 862, 876 (11th Cir.1984), *cert. denied,* 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985).

matical structure of the statute and the use of the word "shall" can only mean that the provision regarding costs is mandatory. Three other circuits have given the same construction to similar language in § 7203. *United States v. Palmer,* 809 F.2d 1504, 1506 (11th Cir. 1987); *United States v. Wyman,* 724 F.2d 684, 688 (8th Cir.1984); *United States v. Chavez,* 627 F.2d 953, 955 (9th Cir.1980) ("The use of the word 'shall' in the statute, although not entirely controlling, is of significant importance, and, indicates an intention that the statute should be construed as mandatory."), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1376, 67 L.Ed.2d 353 (1981).

*United States v. Jungels,* 910 F.2d 1501, 1504 (7th Cir.1990) [holding the imposition of costs under § 7206 is mandatory].

The *Jungels* court explained:

Congress has enacted other statutes which provide for the imposition of costs at the discretion of the district court. 28 U.S.C. § 1918(b) provides: "[w]henever any conviction for any offense not capital is obtained in a district court, the court *may* order that the defendant pay the costs of prosecution." (Emphasis added). The contrast in the language in § 1918, and §§ 7201 and 7206 indicates that Congress knew how to draft both mandatory and discretionary provisions without confusing the two. *Chavez,* 627 F.2d at 955. Because the plain language of the statute is clear, the court need not engage in lengthy examination of legislative history. *Schalk v. Reilly,* 900 F.2d 1091, 1095–96 (7th Cir.1990).

*Jungels,* 910 F.2d at 1504.

The jury in the case at bar found the defendant guilty on both counts of making false tax returns, and the statute under which the defendant was convicted mandates the imposition of the "costs of prosecution."

As to the particular cost items called into question by the defense, there is simply no authority for the argument that Title 28, U.S.C. § 1920 controls or provides an exclusive list of expenses recoverable as the "costs of prosecution" within the meaning of Title 26, U.S.C. § 7206(1).

Specifically, statutory authority for payment of witness fees and allowances for "pre-trial preparation" as a covered cost is found at Title 28 C.F.R. § 21.1(d). Part 21 entitled "Witness Fees" reads at § 21.1(d):

(d) *Pre-trial conference.* A conference between the Government Attorney and witness to discuss the witness' testimony. The conference must take place after a trial, hearing or grand jury proceeding has been scheduled but prior to the witness' actual appearance at the proceeding.

Defense counsel's citation of the "100 mile rule" which is applicable in civil cases does not obtain in criminal proceedings. The Government was required to subpoena out of state witnesses in the present case, did so and is required to reimburse their travel and subsistence within the authorized limits of law. The Court discerns no indiscretions in the reimbursement of witness' travel and subsistence. The Court accepts the Government's argument to the effect that it is difficult at best, considering the sheer number of witnesses which were called in the instant case, for the Government to predict with absolute accuracy when a particular witness would be called and bring such witness into the jurisdiction only precisely on cue. In the Court's opinion the Government's costs set forth in its cost bill constitute reasonable expenses, and the defendant has failed to show that same were tabulated incorrectly or are otherwise not in accordance with law.

Accordingly and for all the above and foregoing reasons,

IT IS ORDERED that the defendant's Motion For New Trial is DENIED.

IT IS FURTHER ORDERED that the Government's Motion to Impose Costs pursuant to Title 26, United States Code § 7206(1) is GRANTED and the costs of prosecution in the amount of $5064.49 shall be included as a part of the defendant's penalty.