**Carlos SOLER, Plaintiff–Appellant,**

v.

**Roger F. SCOTT, Warden, FCI–Safford, AZ; United States Bureau of Prisons; U.S. Immigration and Naturalization Service, Defendants–Appellees.**

No. 89–16051.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 5, 1990.*

Submission Vacated Oct. 12, 1990.

Resubmitted Aug. 1, 1991.

Decided Aug. 1, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to ninth

Cir.R. 34–4 and Fed.R.App.P. 34(a).

Carlos A. Soler, Sheridan, Or., in pro per.

Gerald S. Frank, Asst. U.S. Atty., Tucson, Ariz., for defendant-appellees.

Before BROWNING, GOODWIN and RYMER, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Section 701 of the Immigration Reform and Control Act of 1986 provides:

In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General [through the Immigration and Naturalization Service] shall begin any deportation proceeding as expeditiously as possible after the date of the conviction.

8 U.S.C. § 1252(i) (1988).

Congress enacted Section 701 to accomplish a single objective: to require the INS to abandon its practice of postponing prisoner deportation hearings until after the expiration of a prisoner's sentence. Rather than deporting aliens promptly upon the expiration of their prison sentence, the INS waited until a prisoner completed his or her sentence before even scheduling a hearing to determine whether the prisoner would be deported. These aliens remained in prison while awaiting their deportation hearing. Congress concluded this practice of keeping aliens in prison after they had completed their sentence contributed to prison overcrowding and imposed an unfair, unnecessary and expensive burden on limited federal and state resources. Congress enacted Section 701 to require the INS to begin deportation hearings as soon as possible after conviction so the question of deportation could be resolved before the prisoner's term expired, and if the prisoner was found deportable, deportation could be accomplished promptly. As Representative MacKay, who introduced Section 701 as a floor amendment to the Immigration Reform and Control Act, explained:

[Section 701] addresses a narrow but a very important issue. It has to do with illegal aliens who are convicted of drug-related crimes, who under Federal law should be deported and who, under the policies of the Immigration and Naturalization Service, should be deported on an expedited basis.

The policies require that deportation proceedings begin when a conviction takes place, the idea being that when the sentence is over, the person would be deported.

Now, unfortunately, the very opposite is happening. These people are not be-

ing deported; the expedited procedure is not working; the local and State jails are jammed up[;] the Immigration and Naturalization Service has no incentive to give priority to these because the burden of inaction falls on State and local governments and not on the Federal system.

This amendment provides ... that deportation proceedings will begin when there is a conviction.

132 Cong.Rec. H9794 (October 9, 1986). Representative MacKay proved himself a poor prophet when he added: "I believe this amendment would lead very quickly to a changing of priorities in INS." *Id.*

In the Senate, then-Majority Leader Dole expressed concerns similar to those of Congressman MacKay, noting that the amendment would provide:

authority for expeditious deportation of convicted felons. This is a particular concern of mine, since there are about 6,000 aliens currently in Federal prisons and many more in the State and local systems.

132 Cong.Rec. S16908 (October 17, 1986).

Senator Dole added:

They are occupying space that is desperately needed. They are costing the taxpayers millions for their board and keep.

*Id.* at S16909.

Appellant Carlos Soler, a native of Cuba, entered the United States legally in 1970, and is currently in federal prison for a crime that may subject him to deportation. The INS filed a "Detainer," informing prison authorities that Soler might be deportable, but took no further action. A year after his conviction, Soler filed a pro se petition seeking an order to compel the INS to schedule and hold a prompt deportation hearing. Soler alleged "the INS has a long-standing policy of refusing to begin any deportation proceedings until after release from [Bureau of Prisons] custody," and "has no intention" of holding his hearing before that time "unless compelled to[ ] by this Court."

Soler further alleged that due to the INS' policy he will be forced to remain in

prison beyond the expiration of his term while waiting for the INS to decide whether he should be deported: "By delaying actual [deportation] proceedings until after the incarceration for Petitioner's criminal conviction," Soler alleges, "existing government policy guarantees additional costs of incarceration during the post-incarceration proceedings; and this is precisely what Congress sought to avoid in enacting Title 8 U.S.C. § 1252(i)."

The INS does not deny the existence of the policy Soler alleges, nor its consequences. Instead, the INS argues it is "under no duty enforceable by petitioner to accord him a deportation hearing before he completes his criminal sentence. Moreover, any duty which may exist is discretionary, not ministerial, in nature." We disagree.

## I

■ As Soler asserts, the INS' alleged policy is flatly inconsistent with the text and purpose of Section 701.

The words of the statute are mandatory: the "Attorney General [through the INS] *shall* begin any deportation proceeding as expeditiously as possible after the date of the conviction." 8 U.S.C. § 1252(i) (emphasis added). The use of mandatory language strongly indicates Congress intended to limit INS discretion. *See United States v. Chavez,* 627 F.2d 953, 954–55 (9th Cir.1980). Moreover, by specifically referring to "the date of the conviction," Congress plainly intended this date, not the prisoner's scheduled date for release, to be the benchmark for scheduling deportation hearings. If Soler's allegations are true, the INS has decided not to consider the date of conviction at all in scheduling prisoner deportation hearings but instead to be guided by a date of its own choosing, a date much later than the one chosen by Congress.

By use of the phrase "as soon as possible" Congress gave the INS significant discretion in scheduling deportation hearings. It is clear from legislative history, however, that Congress left the INS no discretion to adopt a policy that fixes a departure point for the exercise of scheduling discretion significantly later than the date Congress mandated, and necessarily postpones every deportation hearing beyond expiration of each individual alien's prison term.

Representative MacKay emphasized that the singular purpose of Section 701 was to end the very practice Soler alleges persists. 132 Cong.Rec. H9794 (October 9, 1986). Congress' stated intent was to ease the chronic problem of prison overcrowding by "provid[ing] ... that deportation proceedings will begin *when there is a conviction.*" *Id.* (emphasis added). Congress plainly did not intend to leave the INS discretion to adopt the very policy it was forbidding.[1]

## II

We conclude Soler's allegations state a cause of action under the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361 (1988), and the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1988).

## A

Assuming the facts to be as alleged, mandamus is an appropriate means of compelling the INS to schedule Soler's deporta-

---

1. For this reason, the INS' apparent interpretation of Section 701 is entitled to no deference. Courts "must reject administrative constructions which are contrary to clear congressional intent." *Chevron U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984).

The INS' only argument in support of its alleged policy of delay is that Section 701 imposes upon it too great a fiscal burden. Congress, however, has concluded the INS is more capable of handling the burden of deportable alien prisoners than the federal and state prison systems, and that the burden more appropriately falls exclusively upon the federal government. As Representative MacKay stated:

> I do not believe [Section 701] would be unduly disruptive on the Federal system. If it is disruptive on the Federal system, that is where the disruption should be instead of where it is now, which is in the State systems.

132 Cong.Rec. H9794 (October 9, 1986).

tion hearing in a manner consistent with Section 701.

▮▮▮ Mandamus may not be used to instruct an official how to exercise discretion. *See e.g., Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 170–71, 2 L.Ed. 60 (1803); *Wilmot v. Doyle,* 403 F.2d 811, 816 (9th Cir.1968). Mandamus is appropriate when an official's duty to act is ministerial in nature and so plain as to be free from doubt. *Moose v. United States,* 674 F.2d 1277, 1284 (9th Cir.1982); *Elliott v. Weinberger,* 564 F.2d 1219, 1226 (9th Cir.1977).[2] This does not mean an official's conduct is unreviewable because the official's responsibilities are in some respects discretionary. As the Supreme Court has long recognized, a "duty may be discretionary within limits. [The official] can not transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them." *Work v. U.S. ex rel. Rives,* 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925) (Taft, C.J.). Thus, the "extent [of the officer's discretion] and the scope of judicial action in limiting it depend upon a proper interpretation of the particular statute and the congressional purpose." *Id.* at 178, 45 S.Ct. at 253. " 'In other words, even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated.' " *Carpet, Linoleum and Resilient Tile Layers, Local Union No. 419 v. Brown,* 656 F.2d 564, 566 (10th Cir.1981) (quoting *Davis Associates, Inc. v. Secretary, Dep't of Hous. and Urban Dev.,* 498 F.2d 385, 389 n. 5 (1st Cir. 1974)).

The cases of *Ganem v. Heckler,* 746 F.2d 844 (D.C.Cir.1984), and *Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers,* 520 F.2d 11 (3d Cir.1975), are illustrative.

In *Ganem,* the petitioner sought mandamus to compel the Secretary of Health and Human Services to determine whether the nation of Iran discriminated against Americans in its social service programs. The Secretary was required by law to determine whether such discrimination existed, and, if it did not, to award benefits to eligible Iranians. *Ganem,* 746 F.2d at 846. The Secretary chose to determine the content of Iranian law only by direct contact with Iranian officials, a practical impossibility because of the interruption of diplomatic relations between the two nations. *Id.* at 847, 853. The court concluded the Secretary could be compelled by mandamus to adopt realistic means for determining Iranian law and her failure to do so "completely contravene[d]" the purpose of the Act to make Social Security Benefits available to eligible Iranians. *Id* at 853–54. The court recognized the Secretary retained "discretion in the method by which she chooses to determine foreign law, but that discretion must be exercised ... consistent with the statutory purposes." *Id.* at 854. "It is simply not within the Secretary's discretion," the court held, "to deprive entitled beneficiaries of their earned rights by virtue of a policy position that virtually assures the Secretary's inability to make a determination which the statute obligates her to make." *Id.* The Secretary's refusal to determine Iranian law by realistic means was "a clear abnegation of [her] statutory responsibilities," *id.* at 848, and could be corrected by mandamus.

The statute involved in *Commonwealth of Pennsylvania* provided the Secretary of

---

**2.** A duty may be plain even if the statute is ambiguous and "requires construction to determine the duties it creates. If the ... duty is clear after the court interprets the statute, the court has jurisdiction [under the Mandamus Act]." *Piledrivers' Local Union No. 2375 v. Smith,* 695 F.2d 390, 392 (9th Cir.1982) (citation omitted). *See also Knuckles v. Weinberger,* 511 F.2d 1221, 1222 (9th Cir.1975) ("once the court interprets the law, the defendant's duty will be clear"); *Roberts v. United States,* 176 U.S. 221, 231, 20 S.Ct. 376, 379, 44 L.Ed. 443 (1900). Thus, the fact that legislative history is consulted in construing Section 701 does not preclude mandamus.

Housing and Urban Development " 'shall from time to time take such action as may be necessary in order to make information and data [relating to flood insurance] available to the public....' " *Commonwealth of Pennsylvania*, 520 F.2d at 26 (quoting 42 U.S.C. § 4020 (1988)). The court recognized that the phrase "as may be necessary" vested significant discretion in the Secretary to decide if and when information should be disseminated. *Id.* However, this discretion pertained only to when and how the Secretary acted, and did not "permit disobedience to the initial directive, implicit in the statutory framework, requiring the Secretary to first consider whether or not action should be taken." *Id.* (citing *Work*, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561). Refusal to take this initial action would be a *"total failure* of the Secretary to perform [his] duties ...," *id.* (emphasis in original), and warranted mandamus relief.

■ In this case, Congress intended that "deportation proceedings begin when a conviction takes place, the idea being that when the sentence is over, the person would be deported." 132 Cong.Rec. H9794 (October 9, 1986) (remarks of Representative MacKay). A policy of delaying prisoner deportation hearings until the expiration of a prisoner's term "transgress[es] th[e] limits," *Work*, 267 U.S. at 177, 45 S.Ct. at 252, of any discretion delegated to the INS by Congress. Such a policy insures, by definition, that Congress' purpose will not be carried out. It is "a clear abnegation of [the INS'] statutory responsibilit[y]," *Ganem*, 746 F.2d at 848, a "total failure of the [INS] to perform [its] duties." *Commonwealth of Pennsylvania*, 520 F.2d at 26. Mandamus is an appropriate remedy to compel compliance with Congress' unequivocal mandate.

B

■ Soler has also stated a claim for relief under the Administrative Procedure Act.[3]

The APA provides, "The reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706; and "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "These sections of the APA create a right of judicial review of agency action unlawfully withheld." *Rank v. Nimmo*, 677 F.2d 692, 698 (9th Cir.1982). *See also Carpet, Linoleum*, 656 F.2d at 566–67. Soler's complaint plainly states a claim under these provisions. The INS' refusal to comply with the clear congressional command to initiate deportation proceedings as soon as practicable after conviction is necessarily "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706.

■ Judicial intervention at this stage is not premature. Though judicial review is limited to "final agency action," 5 U.S.C. § 704, application by the INS of a policy of delaying deportation hearings for incarcerated aliens until the expiration of the alien's prison term, is a final agency decision not to follow the statutory mandate in that case. Where an administrative decision "represent[s] 'agency recalcitrance ... in the face of a clear statutory duty ... of such magnitude that it amounts to an abdication of statutory responsibility' ... 'the court has the power to order the agency to act to carry out its substantive statutory mandates.' " *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C.Cir.1987) (quoting *Public Citizen Health Research Group v.*

---

**3.** Soler's petition does not rely upon the APA explicitly, but we are to construe his pro se pleadings liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980); *United States v. Eatinger*, 902 F.2d 1383, 1385 (9th Cir.1990). Moreover, in *Japan Whaling Ass'n. v. American Cetacean Soc.*, 478 U.S. 221, 228 & 231 n. 4, 106 S.Ct. 2860, 2865 & 2866

n. 4, 92 L.Ed.2d 166 (1986), a case involving no pro se parties, the Supreme Court treated a petition filed under the Mandamus Act to compel agency action as a claim for relief under the APA, reasoning that on the facts of the case the two forms of relief were "in essence" the same. We adopt the same approach.

*Commissioner, Food & Drug Admin.,* 740 F.2d 21, 32 (D.C.Cir.1984)). "[T]he agency might forever evade our review and thus escape its duties if we awaited final agency action before reviewing th[e] claim." *Id. See also Public Citizen v. Bowen,* 833 F.2d 364, 367 (D.C.Cir.1987) ("In the nature of things, obviously, want of finality in the conventional sense cannot be a bar" to a claim that agency action was unlawfully withheld or unreasonably delayed within the meaning of 5 U.S.C. § 706(1)).

Soler cannot be faulted for failing to exhaust administrative remedies; the INS concedes no administrative remedies are available to him under the circumstances of this case.

## III

The district court nevertheless dismissed Soler's complaint on the ground that Section 701 created no implied private right of action, citing *Gonzalez v. INS,* 867 F.2d 1108 (8th Cir.1989). The district court's conclusion that Soler's claim depends upon the existence of an implied private right of action under Section 701 was mistaken.

■ When a petitioner seeks to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), it is not necessary to determine whether the underlying statute creates a private right of action. "The 'right of action' in such cases is expressly created by the Administrative Procedure Act.... A separate indication of congressional intent to make agency action reviewable under the APA is not necessary; instead, the rule is that the cause of action for review of such action is available absent some clear and convincing evidence of legislative intention to preclude review." [4] *Japan Whaling,* 478 U.S. at 231 n. 4, 106 S.Ct. at 2866 n. 4. *See also Sierra Club v. Peterson,* 705 F.2d 1475, 1478–79 (9th Cir.1983).

■ The same is true of a claim under the Mandamus Act to "compel an officer or employee of the United States or any agen-

cy thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. In *Legal Aid Society of Alameda County v. Brennan,* 608 F.2d 1319 (9th Cir.1979), we rejected the argument that a petitioner can proceed under the Mandamus Act only if the statute or regulation allegedly violated by the United States creates an implied private right of action. As we said in *Legal Aid Society:*

Appellees do not seek recognition of a supplemental private enforcement mechanism. They do not seek damages for specific acts of discrimination against themselves. They ask only that the court review the government's own enforcement effort against the standards established by the Executive Order and regulations. Review of this sort is an ordinary element of administrative enforcement schemes, absent clear indication to the contrary. Since the only relief sought in such a suit is that government officials be required to perform the non-discretionary duties imposed upon them by the Executive Order and regulations, the action is by definition compatible with the scheme established by the Order and regulations. The reluctance of courts to imply separate private enforcement rights from statutes or regulations which provide explicitly only for government enforcement procedures and penalties, *see, e.g., Cort v. Ash,* 422 U.S. 66, 78–80 [95 S.Ct. 2080, 2087–89, 45 L.Ed.2d 26 (1975)] ... is not applicable....

*Id.* at 1332. Similarly, Soler "do[es] not seek recognition of a supplemental private enforcement mechanism," but review by mandamus, "an ordinary element of administrative enforcement schemes." *Id.* Thus "[t]he reluctance of courts to imply private enforcement rights ... is not applicable." *Id.*

In sum, a petitioner who has alleged a cause of action under the APA or the Mandamus Act need not rely upon an implied

---

**4.** There is no indication in either the text or legislative history of Section 701 that Congress intended to preclude judicial review.

private right of action under any other statute.

## IV

We also reject the government's argument that Soler lacks standing.

Soler plainly meets the constitutional requirements for standing. He has alleged an injury in fact, illegal incarceration; that injury is fairly traceable to the INS' alleged policy of delaying deportation hearings until the alien's sentence has been served; and the injury would be redressed by the relief requested, the holding of a deportation hearing as expeditiously as possible. *See Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (discussing the constitutional standing requirements).

Soler also meets the statutory requirements for standing under both the APA and the Mandamus Act. An individual has standing to bring a claim under the APA if "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute ... in question." *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). This requirement for standing "is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." *Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 399–400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987) (citations omitted); *see also National Wildlife Federation v. Burford,* 871 F.2d 849, 852 (9th Cir.1989). The standing requirement is satisfied if plaintiff's interest has "a plausible relationship to the policies" underlying the statute. *Clarke,* 479 U.S. at 403, 107 S.Ct. at 759. Review is denied only "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in

the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* at 399, 107 S.Ct. at 757.

Soler's claim is not "so marginally related to or inconsistent with the purposes implicit in [Section 701] that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* To the contrary, though Section 701 was apparently enacted for the benefit of taxpayers rather than incarcerated aliens, Soler's suit advances the stated congressional purpose of reducing prison overcrowding caused by INS delay. Soler's suit thus has "a plausible relationship to the policies" underlying Section 701. *Id.* at 403, 107 S.Ct. at 759.

The Mandamus Act also contains a standing requirement. It may be invoked "to compel [a federal official] to perform a duty *owed to the plaintiff*." 28 U.S.C. § 1361 (emphasis added). The Seventh Circuit has concluded a duty is "owed to the plaintiff" if the plaintiff falls within the "zone of interests" protected by the underlying statute. *See, Jarecki v. United States,* 590 F.2d 670, 675 (7th Cir.1979). We agree.

Though far from identical in other respects, both the APA and the Mandamus Act are "ordinary element[s] of administrative enforcement schemes," *Legal Aid Society,* 608 F.2d at 1332, and both provide a basis for compelling an agency to take action which by law it is required to take. *See, e.g., id.* at 1331 (relying upon both the Mandamus Act and the APA to compel agency action). We see no reason to infer differing standing requirements for these two means of compelling wrongfully withheld agency action. Accordingly, Soler has standing under the Mandamus Act.

### Conclusion

We reverse and remand to permit Soler to pursue his claims under the Mandamus Act and the APA.[5] This opinion shall con-

---

5. Soler has also argued the INS has violated the Equal Protection Clause, the Due Process Clause, 8 U.S.C. § 1252(a), and that he is entitled to discretionary relief under 8 U.S.C.

§ 1182(c). Because these claims were not presented to the district court and, in any event, appear to be meritless, we do not address them

stitute the judgment of the court. The mandate shall issue 14 days from this date. If a suggestion for rehearing en banc is timely filed, the mandate shall be stayed until the full court acts upon the suggestion, at which time the mandate shall issue forthwith.[6]

RYMER, Circuit Judge, dissenting:

I agree that Congress has said what it expects the INS to do, pretty clearly. But I disagree that Soler has made out a clear claim to relief on account of a duty owed to him, as the Mandamus Act requires. 28 U.S.C. § 1361; *see Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir.1983). Federal prisoners were not the intended beneficiaries of section 701 of the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1252(i); the legislative history indicates that states, and overcrowded prisons, were. *See* 132 Cong.Rec. H9794–95 (daily ed. Oct. 9, 1986), S16909 (daily ed. Oct. 17, 1986); *Gonzalez v. INS*, 867 F.2d 1108, 1110 (8th Cir.1989). For this reason, I would affirm.

Unlike the majority, I also would not try to fashion a claim under the Administrative Procedure Act. Soler's petition does not assert an APA claim, and we did not ask the government to brief the issue. While we are certainly obliged to construe pro se pleadings liberally, that obligation does not require us to go off on an untested theory. We could have appointed counsel for Soler and invited a response from the INS. Given that we have done neither, I respectfully dissent.

---

on appeal. *United States v. Greger*, 716 F.2d 1275, 1277 (9th Cir.1983).

**6.** On remand, the district court may wish to consider appointing counsel to assist Soler if, in its judgment, such an appointment would be helpful to the court.