Nestor J. LIMAS, Petitioner,

v.

Gene McNARY, Commissioner of United States Immigration and Naturalization Service; Charles T. Cobb, INS District Director, Boston, MA; Myra Strauss, INS Supervisory Immigration Examiner, Boston; George R. Hess, Officer in Charge, INS Pittsburgh, PA; Lyle Karn, INS District Director, Pittsburgh, PA; Michael Quinlan, Director U.S. Bureau of Prisons, Respondents.

Civ. A. No. 92–10705–WD.

United States District Court, D. Massachusetts.

July 27, 1992.

Nestor J. Limas, pro se.

Naomi G. Litvin, Immigration and Naturalization, Boston, Mass., for respondents.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

### I. *Background*

In this action, the petitioner, who is an alien inmate at a federal correctional institution in Pennsylvania, seeks a writ of mandamus to compel the Immigration and Naturalization Service (the "INS") to commence deportation proceedings against him now, so that when he is released from Bureau of Prisons custody, he will either be a free man or will immediately be deported to his native country.

The majority of the Courts of Appeals that have addressed the question whether an alien has a private right of action under these circumstances have answered in the negative;[1] the Ninth Circuit is the exception.[2] The First Circuit has not yet addressed the issue. After reviewing the relevant case law and legislative history, I

adopt the majority position and will dismiss the plaintiff's petition.

### II. *Factual History*

The petitioner, Nestor J. Limas, is a native and citizen of Colombia who was admitted to the United States as a permanent resident in 1972. He was just shy of eight years old at the time. On November 7, 1988 Mr. Limas was convicted before me on charges of possessing 2.25 kilos of cocaine with the intent to distribute, and conspiracy to distribute cocaine (Crim. No. 88–226–WD). I sentenced him in January 1989 to 66 months in prison, and he has been serving his sentence at federal correctional institutions in Pennsylvania. He is currently an inmate at the Federal Correctional Institution in Schuylkill, PA and is scheduled for release on May 10, 1993.

Mr. Limas's drug conviction had the effect of making him subject to deportation pursuant to Sections 241(a)(2)(A)(iii) and 241(a)(2)(B)(i) of the Immigration and Nationality Act (the "I & N Act"), 8 U.S.C. §§ 1251(a)(2)(A)(iii) and 1251(a)(2)(B)(i). Consequently, in April 1990 George R. Hess, the officer in charge of the Immigration and Naturalization Service's Pittsburgh office and a respondent in this action, lodged a detainer with FCI–McKean, the facility at which Mr. Limas was then incarcerated. The detainer contained the following language:

> Accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments or other treatment which he would otherwise receive.

The Bureau of Prisons acknowledged the detainer the same month.

In May 1991 Mr. Limas filed a petition with the INS's Philadelphia District Director, Lyle L. Karn, a respondent in this case, for relief from potential deportation

---

**1.** See *Aguirre v. Meese,* 930 F.2d 1292 (7th Cir. 1991); *Prieto v. Gluch,* 913 F.2d 1159 (6th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991); *Orozco v. United States INS,* 911 F.2d 539 (11th Cir.1990); *Gonza-*

*lez v. United States INS,* 867 F.2d 1108 (8th Cir.1989).

**2.** See *Soler v. Scott,* 942 F.2d 597 (9th Cir.1991).

pursuant to 8 U.S.C. § 1182. Karn denied the request on January 2, 1992, informing Mr. Limas that he could renew his request before an Immigration Judge once his deportation proceedings had formally commenced. Deportation proceedings are formally commenced when the INS files with the Executive Office for Immigration Review an "Order to Show Cause" outlining the grounds upon which the INS will seek to deport a person. 8 C.F.R. § 3.14. On the day Mr. Limas' request was denied, the INS served Mr. Limas with an "Order to Show Cause." But the INS has not yet filed that Order with the Executive Office for Immigration Review. Consequently, deportation proceedings against Mr. Limas have not yet formally commenced.

Mr. Limas filed this *pro se* petition on March 3, 1992, naming as respondents Gene McNary, the INS Commissioner; Charles Cobb, the Director of the INS District Office in Boston and Myra Strauss, a Supervisory Immigration Officer in the same office; George Hess, the Officer in Charge of the INS District Office in Pittsburgh, PA and Lyle Karn, the Director of the same office; and Michael Quinlan, Director of the U.S. Bureau of Prisons.

### III. *Discussion*

Mr. Limas asserts that contrary to its duty pursuant to the I & N Act, § 1252(i), the INS has failed promptly to schedule and hold a hearing on the matter of Mr. Limas's possible deportation to his native Colombia. That is his primary claim. He seeks either a writ of mandamus pursuant to the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361, or review of the INS failure to act in his case pursuant to the Administrative Procedure Act, 5 U.S.C. § 1001 *et seq.*

In addition, Mr. Limas states a secondary claim: that the INS's filing of a detainer with the Bureau of Prisons has adversely affected his ability to move to a less secure federal facility and particularly, to take advantage of his admission into the evening program of the Wharton School of Business.

The INS has moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the petition, or in the alternative, for a change of venue or for summary judgment. I will treat the INS motion as a motion for summary judgment because I have considered materials beyond the pleadings to which the parties have made reference and I will reach the merits of the claims presented.

### A. *Mandamus*

Section 1252(i) of the Act states that "the Attorney General should begin any deportation proceeding as expeditiously as possible after the date of conviction." Mr. Limas contends that the I & N Act impliedly provides him a private cause of action to enforce the Attorney General's duty under § 1252(i). The availability of such an implied right of action raises a question of statutory construction and one which requires the court to ascertain congressional intent. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *accord, Universities Research Ass'n v. Coutu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981).

█ In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth a four factor test to determine whether a private cause of action is implied in a federal statute:

1) whether the statute was enacted for the benefit of a special class of which the plaintiff is a member;

2) whether there is any indication of legislative intent to create or deny such a remedy;

3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and

4) whether the cause of action is one basically of concern to the states and traditionally relegated to state law.

*Id.* at 78, 95 S.Ct. at 2088. I address each of these factors in turn.

█ First, the legislative history of the I & N Act reveals that in enacting § 1252(i), Congress intended to address the problem of state and local prisons overcrowded with aliens awaiting disposition of their INS de-

portation proceedings. The Congressional discussion of the amendment proposing the new § 1252(i) focused on the need to require the INS to give priority to deportation proceedings for aliens serving time in non-federal prisons, because of the fiscal burden the INS inaction in such cases imposed on state and local governments. *See* 132 Cong.Rec. H9794 (Oct. 9, 1986) (statement of Rep. McKay); 132 Cong.Rec. S16908 (Oct. 17, 1986) (statement of Sen. Dole).

There is no indication that in enacting § 1252(i), Congress was concerned about the rights of inmate aliens vis-a-vis expeditious deportation. Rather, the amendment was offered to benefit local and state governments which were fiscally strained by the responsibility of housing aliens who had completed serving their prison sentences but who were awaiting disposition of their INS deportation proceedings. Therefore, it cannot be said that Congress enacted § 1252(i) for the benefit of imprisoned aliens such as Mr. Limas.

Second, the statute and the legislative history are silent as to whether Congress intended to create or deny a cause of action to compel the INS to carry out its Congressionally-mandated duty to commence deportation proceedings expeditiously after conviction. However, in this regard, the Supreme Court has counseled that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross*, 442 U.S. at 571, 99 S.Ct. at 2486.

The third prong of the *Cort* inquiry requires a court to ascertain whether implying a private cause of action would be consistent with the underlying purpose of the statute at issue. The I & N Act was enacted as a comprehensive immigration reform measure which addressed a number of policy objectives: stemming the flow of illegal immigrants into the country; interrupting or decreasing the flow of illegal drugs into the country; and removing from the country illegal aliens who had engaged in narcotics trafficking. *See* 132 Cong.Rec. S16908 (Oct. 17, 1986). While the primary objectives of the I & N Act included removing certain classes of aliens from the country (e.g., illegal aliens and those convicted of committing felonies), the I & N Act also contained provisions which sought to protect the rights of aliens generally, e.g., by prohibiting discrimination by employers based upon national origin or citizenship status. However, as to convicted aliens such as Mr. Limas, the I & N Act's purpose was clearly to expedite deportation as a benefit to state and local governments, not to create new causes of action through which convicted aliens could seek to direct the timing of deportation proceedings against them. *See Prieto v. Gluch*, 913 F.2d 1159, 1166 (6th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991).

Finally, under the *Cort* standard the court must consider whether the implied cause of action is a matter of primarily state concern or is in an area that has traditionally been governed by state, not federal, law. Because immigration policy is a matter of national, not state, concern, and because the petitioner is a federal prisoner in a federal correctional institution, federalism concerns are not present in this case.

The lack of state concern in this case further illustrates why a federal cause of action for petitioner should not be implied by the courts. There are, to be sure, powerful practical arguments to be made for alleviating federal prison overcrowding and reducing federal taxpayer burdens by expeditiously commencing deportation proceedings involving such prisoners. That is a concern of the Attorney General in his supervisory capacity over the Federal Bureau of Prisons. Presumably, administrative demands on the Immigration and Naturalization Service—which the Attorney General also supervises—have led to less than expeditious deportation procedures for federal prisoners who are convicted aliens. The burdens and costs of delayed deportation action are immediately felt by the relevant federal instrumentalities. The balancing of these demands is a matter of direct executive branch control and the subject of direct legislative branch oversight. Unlike state and local governments which have no direct

say in the deployment of resources to satisfy the incarcerative consequences flowing from the pace of Immigration and Naturalization Service action, the federal government confronts the issue head on daily. There is no structural reason to believe the question of how quickly to effect deportation is being neglected or ignored by the federal government's executive or legislative branches. Whatever may be the justification for implying on behalf of state or local government a cause of action to obtain judicial enforcement of the directives of § 1252(i)—a matter not presented in this case—nothing in the structure or intent of the I & N Act suggests that a convicted alien serving time as a federal prisoner should have such a cause of action implied on his behalf.

It is clear that the I & N Act creates a duty on the part of the INS to "commence any deportation proceeding as expeditiously as possible after the date of the conviction." 8 U.S.C. § 1252(i); *see Soler v. Scott*, 942 F.2d 597, 600 (9th Cir.1991). However, my examination of § 1252(i) in light of the four factors articulated in *Cort* satisfies me that § 1252(i) does not impliedly authorize private causes of action by imprisoned aliens such as Mr. Limas to enforce this provision.

■ Necessarily then, mandamus pursuant to 28 U.S.C. § 1361 may not lie in this case against the INS. The Mandamus and Venue Act "provides an enforcement medium only to those seeking 'to compel an officer or employee of the United States or any agency thereof to perform *a duty owed to the plaintiff.'* " *Medina v. United States*, 785 F.Supp. 512, 514 (E.D.Pa. 1992).

## B. *Administrative Procedure Act*

■ Mr. Limas also seeks review pursuant to the Administrative Procedure Act, 5 U.S.C. § 1001 *et seq.* (the "APA") of the failure of the INS thus far to schedule his deportation hearing. However, APA review of his claim is unavailable.

In *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), the Supreme Court considered whether review of deportation hearings was available pursuant to the APA or was precluded by the Immigration and Nationality Act of 1952 (the precursor to the I & N Act). The Court concluded that in prescribing a specialized administrative procedure applicable to deportation hearings which drew liberally upon the analogous provisions of the APA, Congress intended to *preclude* APA review of deportation proceedings. *Id.* at 308–10, 75 S.Ct. at 761.

The Court reaffirmed this principle very recently, in *Ardestani v. INS*, —— U.S. ——, ——, 112 S.Ct. 515, 518, 116 L.Ed.2d 496 (1991) ("[a]lthough immigration proceedings are required by statute to be determined on the record after a hearing ... they are not governed by the APA"). There, the Court noted that its holding in *Marcello* rested on the proposition that immigration proceedings were to be "the *sole* and *exclusive* procedure for determining the deportability of an alien." *Ardestani*, —— U.S. at ——, 112 S.Ct. at 519. Accordingly, the APA is inapplicable here.

## C. *Effect of INS Detainer*

■ The secondary claim asserted by Mr. Limas is an objection to the Bureau of Prisons policy of not allowing inmates who are deportable aliens from receiving a pre-release transfer to a minimum security institution.[3] However, the relevant provisions of the I & N Act do not restrict the discretion of *prison* officials with respect to security classifications and related matters; rather, they are directed toward *INS* officials. *See Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir.1989). Moreover, inmates have no constitutional right to a particular security classification, nor are federal due process rights implicated in this case. *Felix v. Hayes*, No. C-91-0946, 1991 U.S.Dist. LEXIS 9976, at *5 (N.D.Cal.1991).

---

3. *See* Operations Memorandum No. 30–90(5100) of the Federal Bureau of Prisons (February 8, 1990).

Therefore, I conclude petitioner's secondary claim must be dismissed.

IV. *Conclusion*

For the reasons stated more fully above, I hereby grant summary judgment for the respondents as to all claims.