Clara **FADARE**, Plaintiff,

v.

Janet **RENO**, Attorney General of the United States of America, Defendant.

**UNITED STATES** of America, Plaintiff,

v.

Clara **FADARE**, Defendant.

Nos. 93 CV 1890 (ERK), 89 CR 683–01 (ERK).

United States District Court, E.D. New York.

April 27, 1993.

Clara Fadare, pro se.

Mary Jo White, U.S. Atty., E.D.N.Y., Brooklyn, NY, for Reno and U.S.

### MEMORANDUM & ORDER

KORMAN, District Judge.

Clara Fadare was sentenced to the custody of the Attorney General for a period of 51 months for attempting to import 979.1 grams of a substance of which 89% was heroin. Mrs. Fadare is scheduled to complete her sentence on June 16, 1993. Because Ms. Fadare is a deportable alien, she will be taken into the custody of the Immigration and Naturalization Service following the completion of her sentence.

When Ms. Fadare wrote me recently to request the return of certain photographs of her children that she had sent me prior to sentencing, I caused an inquiry to be made to be sure that her passport had been forwarded to the Immigration and Naturalization Service. The purpose of the inquiry was to ensure that she would not face extended incarceration beyond the 51 month sentence because of the failure of the Drug Enforcement Administration or the Customs Service to forward Ms. Fadare's passport to the Im-

migration and Naturalization Service. *See Nwankwo v. Reno,* 1993 WL 104901, 1993 U.S.Dist. LEXIS 4433 (E.D.N.Y. March 30, 1993).

■ I was advised informally that the Immigration and Naturalization Service already has possession of Ms. Fadare's passport and airline ticket. Nevertheless, as I have also been advised, Ms. Fadare's incarceration will be extended beyond June 16, 1993 because the Immigration and Naturalization Service does not intend to commence deportation proceedings against her until after she has completed her sentence.

Ms. Fadare, who is currently serving her sentence in Lexington, Kentucky, and who will be deported to Nigeria, will be transferred either to Laredo or to El Paso, Texas where the Immigration and Naturalization Service plans to commence deportation proceedings against her. If all goes smoothly, she will be deported by late August. No reason was given for the inability of the Immigration and Naturalization Service to conduct the deportation proceedings in Lexington, Kentucky prior to the time Ms. Fadare completes her sentence in June.

In a memorandum and order signed today, I have described the nature of the misconduct of the Immigration and Naturalization Service that is reflected in the manner in which the Immigration and Naturalization Service proposes to effect the deportation of Ms. Fadare and the considerable cost to the taxpayers of the practice of extending the incarceration of deportable aliens beyond the time of their sentences. *Iheme v. Reno,* 819 F.Supp. 1192 (E.D.N.Y.1993).

Specifically, Section 701 of the Immigration Reform and Control Act of 1986 provides:

> In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of the conviction.

8 U.S.C. § 1252(i).

In *Soler v. Scott,* 942 F.2d 597, 600 (9th Cir.1991), *vacated as moot,* —— U.S. ——, 113 S.Ct. 454, 121 L.Ed.2d 364 (1992), Judge

Browning set out concisely the "single objective" that Congress sought to accomplish by the enactment of Section 701:

> Congress enacted Section 701 ... to require the INS to abandon its practice of postponing prisoner deportation hearings until after the expiration of a prisoner's sentence. Rather than deporting aliens promptly upon the expiration of their prison sentence, the INS waited until a prisoner completed his or her sentence before even scheduling a hearing to determine whether the prisoner would be deported. These aliens remained in prison while awaiting their deportation hearing. Congress concluded this practice of keeping aliens in prison after they had completed their sentence contributed to prison overcrowding and imposed an unfair, unnecessary and expensive burden on limited federal and state resources. Congress enacted Section 701 to require the INS to begin deportation hearings as soon as possible after conviction so the question of deportation could be resolved before the prisoner's term expired, and if the prisoner was found deportable, deportation could be accomplished promptly.

The Immigration and Naturalization Service did not comply with Section 701 here, just as it has ignored the intent of Congress in other cases. *Soler,* 942 F.2d at 600–601. Nevertheless, there is still a chance to avoid what the Immigration and Naturalization Service has conceded to be a costly and inhumane practice of extending the incarceration of a deportable alien beyond the completion of her term. Accordingly, the United States Attorney is directed to show cause within seven days from the date of this order why the Attorney General should not be ordered to commence and complete deportation proceedings prior to June 16, 1993. *See Soler v. Scott,* 942 F.2d 597, 600 (9th Cir. 1991), *vacated as moot,* — U.S. —, 113 S.Ct. 454, 121 L.Ed.2d 364 (1992).

■ I recognize that Ms. Fadare has not requested this relief. She is alien unschooled in the law and unaware of her rights. She is the kind of person who would suffer in silence the apparent lawlessness of an insensitive bureaucracy. Accordingly, it is appropriate for me to issue this relief *sua sponte.* Nevertheless, the Federal Defender Services of the Legal Aid Society, which is appointed to represent Ms. Fadare, is directed to contact her to determine if she wishes to go forward with the proposed proceedings.

SO ORDERED.