23 F.3d 394
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Juan CAMILO-MONTOYA, Petitioner,
v.
UNITED STATES of America, Respondent.
 No. 93-1913
 United States Court of Appeals,
First Circuit.
 May 20, 1994
 
 Appeal from the United States District Court for the District of Rhode Island [Hon. Francis J. Boyle, Senior U.S. District Judge ]
 Juan Camilo Montoya, on brief for appellant.
 Edwin J. Gale, United States Attorney, and James H. Leavey, Assistant United States Attorney, on brief for appellee.
 D.R.I.
 AFFIRMED.
 Before Breyer, Chief Judge, Torruella and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 In 1986, appellant Juan Camilo Montoya, a Colombian native, was convicted of federal drug offenses after being tried in absentia. His sentence included a 22 year prison term. He has served approximately 7 years of this term. In 1993, Camilo Montoya filed a petition for mandamus and supporting memorandum with the United States District Court for the District of Rhode Island. He alleged that since 1988, he has been subject to an Immigration and Naturalization Service (INS) "detainer" which notified him that he is subject to deportation as a result of the aforementioned conviction. Camilo Montoya claimed that he had written to the Attorney General and requested a prompt deportation hearing but that he had received no response.[1] He sought mandamus to compel the government to grant him an immediate deportation hearing in accordance with 8 U.S.C. Sec. 1252(i), which provides that, "[i]n the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of conviction." In support of his claim, Camilo Montoya relied on Soler v. Scott, 942 F.2d 597 (9th Cir. 1991), vacated as moot sub. nom. Sivley v. Soler, 113 S. Ct. 454 (1992), and Abreu v. United States, 797 F. Supp. 50 (D.R.I. 1992)(holding that incarcerated aliens' petitions for mandamus to compel INS to hold deportation hearings stated a cause of action under the Mandamus and Venue Act (MVA), 28 U.S.C. Sec. 1361, and the Administrative Procedure Act (APA), 5 U.S.C. Secs. 702-06).[2]
 
 
 2
 The district court denied the petition for mandamus based on cases from numerous circuits which hold that 8 U.S.C. Sec. 1252(i) does not give criminal aliens a private right of action to compel the INS either to commence deportation proceedings or hold deportation hearings. The leading case is Gonzalez v. United States I.N.S., 867 F.2d 1108, 1109-10 (8th Cir. 1989).[3] Cases which adopt this approach include Aguirre v. Meese, 930 F.2d 1292, 1293 (7th Cir. 1991)(per curiam); Prieto v. Gluch, 913 F.2d 1159, 1165-66 (6th Cir. 1990), cert. denied, 498 U.S. 1092 (1991), and Orozco v. United States I.N.S., 911 F.2d 539, 541 (11th Cir. 1990)(per curiam). See also Alvaro- Gallo v. United States, 814 F. Supp. 1019, 1020 (W.D. Okla. 1993); Limas v. McNary, 799 F. Supp. 1259, 1263 (D. Mass. 1992); Medina v. United States, 785 F. Supp. 512, 514 (E.D. Pa. 1992); Cabezas v. Scott, 717 F. Supp. 696, 697 (D. Ariz. 1989).[4] Another case which denied mandamus relief on similar grounds is Giddings v. Chandler, 979 F.2d 1104, 1109-10 (5th Cir. 1992).[5] Camilo Montoya filed a timely appeal.
 
 
 3
 On appeal, Camilo Montoya contends that his case is "on all fours" with Soler v. Scott, supra, and asks us to adopt the analysis in Soler as a matter of first impression.[6] He also seems to be arguing that while an alien cannot reasonably expect to be deported after serving only a little time in jail, he is entitled to be deported now because he has served over 90 months and still has not received a deportation hearing under 8 U.S.C. Sec. 1252(i).[7] Camilo Montoya also says that another law requires the Bureau of Prisons to house deportable aliens in a facility separate from the other inmates, and that the government's failure to perform this duty has endangered his life and liberty. He asks us to issue an order instructing the government to house him in a facility designed to hold aliens awaiting deportation and to issue a writ of mandamus to compel the government to, in effect, complete the deportation proceedings against him.[8]
 
 
 4
 Relying largely on Gonzalez and its progeny, the government contends that 8 U.S.C. Sec. 1252(i) does not give alien prisoners the right to compel the government to schedule deportation hearings and that the district court properly dismissed Camilo Montoya's petition for mandamus in accordance with all of the circuits which have ruled on this issue. The government further argues that Soler is wrong, and urges us to adopt the majority view. We find it unnecessary to resolve this issue for it is clear that Camilo Montoya's petition for mandamus failed to state a viable claim.
 
 
 5
 Mandamus is an extraordinary remedy that is only available upon a showing that the plaintiff has exhausted all other avenues of relief and that the defendant owes the plaintiff a clear, nondiscretionary duty. See, e.g., Heckler v. Ringer, 466 U.S. 602, 616 (1984); Georges v. Quinn, 853 F.2d 994, 995 (1st Cir. 1988)(per curiam). Even if we assume, without deciding, that under 8 U.S.C. Sec. 1252(i) the Attorney General owes Camilo Montoya a duty to "begin deportation proceedings as expeditiously as possible after the date of conviction," and that Camilo Montoya has a private cause of action to enforce this statute, Camilo Montoya is not entitled to relief, for his filings do not suggest that the government has violated this duty in this case.
 
 
 6
 Camilo Montoya alleges only that he has served about 90 months of a 22-year sentence, that he has been subject to an INS "detainer" since 1988, that he received at least one, and possibly two, Orders to Show Cause (one notifying him that he was required to appear for a deportation hearing that was to be set, the other setting a deportation hearing which did not materialize for unknown reasons), and that he has repeatedly requested, but not yet received, a deportation hearing. These allegations do not suggest that the INS has failed to begin deportation proceedings "as expeditiously as possible" after Camilo Montoya's conviction. To the contrary, if at least one of the Orders to Show Cause was filed with the Office of the Immigration Judge, then the INS has commenced deportation proceedings. And even if neither order was so filed, it nonetheless appears that the INS is prepared to do so. The INS's failure to hold the deportation hearing at this point in time is not sufficient to make out a violation of 8 U.S.C. Sec. 1252(i) on this record.
 
 
 7
 Contrary to Camilo Montoya's contention that he is entitled to be deported now because he has served approximately 90 months of his 22-year term and his codefendants have been deported, the Immigration Act prohibits his deportation until he completes his prison sentence. See 8 U.S.C. Sec. 1252(h)("An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement."). According to his own estimate, Camilo Montoya has at least four more years to serve before he can be deported. This is ample time for the government to complete deportation proceedings. At a minimum, then, mandamus is premature.
 
 
 8
 In view of the foregoing, we decline to reach the other issues raised by the parties' briefs. The judgment of the district court is affirmed.
 
 
 
 [1]
 We note that although Camilo Montoya's memorandum in support of his petition for mandamus refers to a "detainer," the INS document attached to it is actually a form Order to Show Cause. That Order indicates that it was served on Camilo Montoya on 10/4/88 and that the time, date, and place of his deportation hearing would be set. The Order to Show Cause also indicates that Camilo Montoya did not request a prompt deportation hearing until 3/7/92. We cannot tell whether this Order to Show Cause was filed with the Office of the Immigration Judge, thereby formally commencing deportation proceedings under 8 C.F.R. Sec. 242.1(a)("Every proceeding to determine the deportability of an alien ... is commenced by the filing of an Order to Show Cause with the Office of the Immigration Judge, ..."). In any event, Camilo Montoya's appellate brief states that he received another Order to Show Cause which indicated that his deportation hearing would take place within fourteen days, but that he did not hear anything further despite multiple letters to the INS and the Attorney General requesting an expeditious deportation hearing
 
 
 [2]
 28 U.S.C. Sec. 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. (emphasis supplied). The APA, 5 U.S.C. Sec. 702, provides that, "[a] person ... adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof[,]" while 5 U.S.C. Sec. 706, creates a right of judicial review of agency action unlawfully withheld or unreasonably delayed. See Soler, 942 F.2d at 603. However, there is no right to judicial review if it is precluded by statute or the agency action has been committed to agency discretion by law. See Heckler v. Chaney, 470 U.S. 821, 828 (1985)(citing 5 U.S.C. Secs. 701(a)(1) and (2)). And, judicial review is limited to "final agency action for which there is no other adequate judicial remedy in a court" under 5 U.S.C. Sec. 704. See Soler, 942 F.2d at 603
 
 
 [3]
 3. Gonzalez so concluded after analyzing the statute's language and legislative history under Cort v. Ash, 422 U.S. 66 (1975), which sets out a four-part test for determining whether a private right of action should be implied in a federal statute. After examining each of these factors and noting that the legislative history was silent on the issue of whether Congress intended that aliens have the right to enforce Sec. 1252(i), the Eighth Circuit concluded that Congress enacted Sec. 1252(i) primarily to alleviate prison overcrowding and that "it would be inconsistent with this purpose to imply a private cause of action in favor of incarcerated aliens to compel an immediate deportation hearing." See 867 F.2d at 1109-10. However, Soler expressly rejected the Gonzalez approach. See 942 F.2d at 604- 05 ("a petitioner who has alleged a cause of action under the APA or the Mandamus Act need not rely upon an implied private right of action under any other statute")
 
 
 [4]
 4. But see Iheme v. Reno, 819 F. Supp. 1192, 1194 & n. 1 (E.D. Pa. 1993)(criticizing foregoing cases on ground that the view that Sec. 1252(i) "is simply precatory ... and ... not subject to judicial enforcement ... has eliminated any incentive the ... [INS] had to comply with the congressional mandate")
 
 
 [5]
 5. In Giddings v. Chandler, 979 F.2d at 1107, n. 22, the Fifth Circuit declined to reach the issue of whether a private right of action under 8 U.S.C. Sec. 1252(i) was required for mandamus relief. Instead, that court concluded that Giddings lacked standing to maintain his action to compel the government to commence deportation proceedings under both the MVA and the APA because he did not fall within the "zone of interests" protected by 8 U.S.C. Sec. 1252(i). See 979 F.2d at 1108-10. Relying on Gonzalez, Giddings also concluded that 8 U.S.C. Sec. 1252(i) imposed a duty on the Attorney General to deport criminal aliens but "stop[ped] short of concluding that this creates a duty owed to the alien [ ]" sufficient to enable the alien to maintain an action for mandamus under 28 U.S.C. Sec. 1361. Id. at 1110
 
 
 [6]
 We note that though Soler was vacated, the Ninth Circuit subsequently indicated that its rationale remained sound. See Silveyra v. Moschorak, 989 F.2d 1012, 1024 n. 2 (9th Cir. 1993) (per curiam). However, Silveyra appears to limit Soler to its facts, for it stresses that Soler's petition for mandamus alleged that the INS had a policy of delaying incarcerated aliens' deportation hearings until after their criminal sentences had expired, in direct contravention of Sec. 1252(i)' § requirement that the government use the date of conviction, not the date of release, as the benchmark from which to commence deportation proceedings. As Silveyra did not make similar allegations, the Ninth Circuit held that his complaint to compel an immediate deportation hearing was properly dismissed for failure to state a claim under the MVA and the APA. See 989 F.2d at 1015
 
 
 [7]
 In support of this contention, Camilo Montoya observes that all of his codefendants were deported long ago
 
 
 [8]
 8. Camilo Montoya did not challenge the place of his confinement below. The issue, apart from appearing specious, is not properly before us